**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Albert RIVERA, Jr., Defendant-
Appellant.**

**No. 73–2480.**

United States Court of Appeals,
Fifth Circuit.

March 6, 1974.

---

———◆———

Oscar J. Pena, Laredo, Tex. (Court-appointed), for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Robert Darden, Asst. U. S. Atty., Houston, Tex., Daniel V. Alfaro, Asst. U. S. Atty., Laredo, Tex., for plaintiff-appellee.

Before BELL, THORNBERRY and DYER, Circuit Judges.

BELL, Circuit Judge:

Appellant Rivera and James Ray Prince were charged in a two-count indictment with possessing 105 pounds of marijuana with intent to distribute the same in violation of 21 U.S.C.A. § 841(a)(1), and with importing the marijuana into the United States from Mexico in violation of 21 U.S.C.A. §§ 952(a) and 960(a)(1). The court granted Prince's motion to sever and he testified for the government. Appellant was convicted on both counts and this appeal followed.

Appellant contends that the evidence was insufficient to convict, and that he was denied a fair trial through the introduction of evidence as to his prior criminal record, that he was traveling in a stolen vehicle, and that he was a marijuana smoker. We find that the evidence was sufficient but that appellant is entitled to a new trial on the basis of the cumulative effect of two of the evidentiary assignments of error.

Appellant and James Ray Prince resided in Austin, Texas. Prince was 18 years of age at the time in question. Appellant stated to Prince that he did not have a driver's license and that he needed someone to drive an automobile for him to Nuevo Laredo, Mexico, where it was to be delivered, and to drive another vehicle on the return trip. Prince testified that he wished to have a trip to Mexico and thus agreed to drive for appellant. They left Austin in a 1967 Cadillac automobile, arriving in Laredo, Texas at about 2:00 A.M. on the morning of October 31, 1972. They were unable to produce proof of ownership of the vehicle when they attempted to cross the border at Laredo into Mexico and the vehicle was impounded by the City of Laredo Police Department.

Appellant and Prince then walked across the border to Nuevo Laredo where appellant telephoned a man named "Rudy" from a restaurant at approximately 4:00 A.M. Rudy met them at the restaurant shortly thereafter and appellant reported the occurrence of the impounding of the Cadillac to Rudy.

Rudy inquired as to why "Oscar" had not sent the papers with the Cadillac and appellant responded that he did not know. It developed that "Oscar" was Oscar Mendoza of Austin, appellant's cousin. Appellant paid for meals and drinks for Prince at the restaurant and at a bar which they visited with Rudy.

Appellant and Prince remained in Nuevo Laredo during that day and at about 5:00 P.M. Rudy delivered a 1961 pickup truck to them.

Prince testified that appellant asked him to drive the truck across the border into the United States. They set out together but en route to the border crossing appellant asked to get out, stating that he wanted to buy some liquor. He directed Prince to cross the border alone. He had previously insisted that Price cut his hair, stating that it was too long and that it would be easier for him to get the truck into the United States if he would shorten his hair.

The customs inspectors were on the lookout for the truck and Prince was arrested as he crossed the border. The marijuana was found in compartments under the truck's rear fenders. Appellant showed up in a taxicab as Prince was being arrested and was thereupon interrogated. He at first denied that he knew Prince but later acknowledged that he did know him. Prince stated to appellant in the presence of a customs officer that appellant had caused him to get into trouble.

On cross-examination Prince stated that the truck belonged to Rudy and that he did not see appellant put the marijuana in it. He stated that he was to meet appellant in Laredo in front of the courthouse once he had crossed the border with the truck.

The first of the evidentiary problems arose during the examination of one of the customs officers who accosted appellant when he arrived at the international bridge just after Prince had been stopped. The officers suspected that appellant and Prince were together since they both claimed to be from Austin and they had arrived at the same time. Counsel for the government inquired as to whether this officer had asked appellant to identify himself. Receiving an affirmative response, counsel then inquired if the officer asked him for his driver's license. The officer responded that he did not have a driver's license. Counsel then directed the officer to tell the jury of any type of identification that appellant might have had. The officer immediately responded, "He had a certificate of release from the penitentiary." Defense counsel moved for a mistrial. His motion was overruled and defense counsel then asked for a cautionary instruction which was given.

The second evidentiary question arose during the cross-examination of Prince. He was asked by defense counsel whether he had ever smoked marijuana and he stated that he had. Government counsel then took Prince on re-direct. He developed from him that he was assisting appellant in driving the car to Mexico for delivery to "somebody" and that appellant was to exchange the automobile for the truck. Then, after alluding to the fact that he had testified on cross-examination that he had smoked marijuana, government counsel inquired whether Prince had smoked marijuana on the way from Austin to Laredo. He responded, "I didn't, no, sir." He was then asked whether he had an opportunity to smoke it. He replied, "Yes, sir." Government counsel asked, "Why?" and Prince answered, "Cause Albert [appellant] was offering it to me." Defense counsel then moved for a mistrial and his motion was overruled. There was no request for a cautionary instruction and no such instruction was given.

The other claim of error based on the admission of prejudicial testimony has to do with the impoundment of the Cadillac by Laredo police officers. Appellant contends that the testimony gave the jury the impression that he was in a stolen vehicle. There is no merit whatever in this contention. It was made clear by the testimony that the vehicle was simply being held pending receipt of

the papers on it from Oscar Mendoza, who had been notified by teletype to forward them.

The sufficiency of the evidence against appellant goes to the question of possession. He relies heavily on Montoya v. United States, 5 Cir., 1968, 402 F.2d 847, where we held that there must be a showing of dominion and control over the vehicle in which drugs were found in order for one to have possession of the drugs. We recognized that possession might be constructive rather than actual but that mere close proximity to the drug or association with someone in possession was not sufficient to constitute possession. We pointed to the rule that to sustain a conviction in a circumstantial evidence case, the inferences to be drawn from the evidence must not only be consistent with guilt but also inconsistent with every reasonable hypothesis of innocence. 402 F.2d at 850. It must be noted that the evidence connected Montoya only as an occupant of the vehicle. The driver admitted guilt.

■ Here appellant was not in the truck when it was stopped by customs and there is no evidence that he put the marijuana in the compartments under the fenders of the truck. Thus we have a question of constructive possession. The evidence was that Prince was on the trip at the instance of appellant and was driving the truck at his express direction. Prince's expenses were being paid by appellant and all arrangements to obtain possession of the truck were made by appellant. In addition to denying that he knew Prince after Prince was arrested, appellant was accused on the scene by Prince of having caused Prince to get into trouble. Moreover, Prince testified that he knew that there was "something" in the truck at the time he was driving it across the bridge, that the "something" was wrong, and that appellant had "gotten" him into the "wrong." The inferences to be drawn from this evidence, together with the inference from the evidence that appellant insisted that Prince cut his hair to make it easier to cross the border, are consistent with guilt. Further, they are inconsistent with the only reasonable hypothesis of innocence, i. e., that appellant was simply delivering the truck for Rudy or some other person from Nuevo Laredo to Austin. The evidence was sufficient to warrant the conviction.

We next address the evidentiary problems having to do with the testimony, later stricken, that appellant had a release from the penitentiary, and the testimony, which was not stricken, that he offered marijuana to Prince.

■ The evidence that appellant was identified with a prison release certificate was completely immaterial and irrelevant. It would have been proper to show that appellant had no driver's license in an effort to bolster the position of the government that this explained why appellant had obtained Prince to serve as driver. However, government counsel did not stop at this point, but went on to bring out the fact that appellant had been in the penitentiary. This prejudicial testimony was inadmissible and the court properly sustained an objection to it. The jury was told not to take any other offense into account in deciding the case, and there was no objection to the form of the cautionary instruction, but the motion for mistrial was overruled.

■ A little later in the case, government counsel elicited testimony that appellant was offering marijuana to Prince en route from Austin to Laredo. This testimony was irrelevant to any issue on trial, or at best relevant only in a highly attenuated manner. The charges involved 105 pounds of marijuana being brought across the border, and had little or no connection with the smoking or possession of marijuana prior to crossing into Mexico. Further, we do not think that this evidence was probative of motive, intent, design or knowledge, nor could it be justified as an effort to impeach Prince's credibility. *Cf.* United States v. Williamson, 5 Cir., 1973, 482 F.2d 508, 514, in which mildly prejudicial testimony was admissible because it served a valid evidentiary purpose.

We need not decide whether either of these two evidentiary problems standing alone would warrant a new trial, for it is clear that the combination "was prejudicial to the extent that it may have had some substantial influence on the jury," and that the "defendant therefore was denied the fair trial to which he was entitled." United States v. Haynes, 5 Cir., 1972, 466 F.2d 1260, 1267. Especially are we satisfied of this in light of the circumstantial nature of the case against appellant. *See* United States v. Ratner, 5 Cir., 1972, 464 F.2d 169, 172–173; *cf.* Russell v. United States, 5 Cir., 1970, 429 F.2d 237, 239 (strong government case resting on confessions and testimony of co-conspirator). We thus conclude that even if the trial court correctly denied the first motion for mistrial, it erred by denying the second, for at that point the trial had been twice marred by evidence of prejudicial, inadmissible facts about appellant's character. We therefore reverse for a new trial.

Reversed and remanded for further proceedings not inconsistent herewith.