**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Nolan Ray WILLIAMSON, Defendant-
Appellant.**

No. 72–3633
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 13, 1973.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Edward T..M. Garland, Atlanta, Ga., for defendant-appellant.

John W. Stokes, Jr., Atlanta, Ga., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Nolan Ray Williamson was convicted of unlawful distribution of amphetamine capsules in violation of 21 U.S.C. § 841(a) and § 812, and of forcibly assaulting, resisting, impeding, intimidating or interfering with officers of the Bureau of Narcotics and Dangerous Drugs in violation of 18 U.S.C. § 111. We affirm the convictions on both counts.

Several days prior to the transaction from which the present charges arose,

Agent Shumard of the Bureau of Narcotics and Dangerous Drugs contacted John Henry Glover, who, the agent had learned from a confidential source, was engaged in illicit distribution of amphetamines. After extended negotiations, Glover agreed to deliver 20,000 capsules in Atlanta to persons designated by Shumard. The time for delivery was delayed to accommodate Glover's source. On the evening set for the transfer, Glover checked into a motel in northeast Atlanta, where his room was placed under surveillance by a detail of federal and state narcotics agents under the direction of a federal agent. Several hours later Williamson arrived at the motel, carried a suitcase and a cardboard box into Glover's room and returned to his car in the motel parking lot where he sat with the motor running. Shortly thereafter Glover informed his contact that he was ready to make the transfer.

Two federal undercover agents went to Glover's room, where Glover delivered 500 bottles of amphetamine capsules to them. The agents then placed Glover under arrest, and notified agents outside of this action by radio transmitter. On the receipt of this signal, the surveillance detail moved to surround Williamson's automobile. Officer Davis, a state narcotics agent, displayed his identification and stated, "State officer, you're under arrest." Williamson then attempted to drive off. In the process, he struck Davis with his automobile and narrowly missed a car containing two other agents. Williamson's escape was blocked by another officer's automobile and he was taken into custody.

On appeal Williamson asserts the following grounds for reversal of his conviction: (1) denial of his motion for severance of trial on the two counts of the indictment; (2) failure of proof of a violation of 18 U.S.C. § 111, and inconsistency of the verdicts on the two alleged violations of § 111; (3) admission of prejudicial testimony and tangible evidence; (4) failure to give an entrapment instruction; and (5) the overall unfairness of the trial proceedings.

(1) *Severance.* Since the two offenses charged arose from a single transaction, there was clearly no misjoinder under F.R.Crim.P. 8(a).[1] Appellant contends, however, that the joinder of offenses resulted in sufficient prejudice to require severance under F.R.Crim.P. 14.[2] First, he suggests that joinder increased the possibility of conviction by allowing evidence on each charge to bolster that on the other. There is a recognized danger that in any prosecution involving more than one offense the jury may cumulate evidence which is unpersuasive on each of the various counts if considered separately to find guilt in sum. See, *e. g.,* Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85, 88–89 (1964); United States v. Lotsch, 102 F.2d 35, 36 (2d Cir.), cert. denied 307 U.S. 622, 59 S.Ct. 793, 83 L. Ed. 1500 (1939). However, in the present case separate trials would not have resulted in segregation of the evidence as to each offense. In a trial solely on the drug charge, the attempted exit from the parking lot and the resulting assault on the agent would have been admissible as evidence of flight. On the other hand, in a trial on the assault charge, the evidence of the drug transaction would have been admissible to prove motive and to prove that the officers were engaged in the performance of their official duties. Therefore, insofar as segregation of evidence is concerned, the failure to sever resulted in no prejudice to the Appellant. See, *e. g.,* Robinson v. United States, 148 U.S. App.D.C. 58, 459 F.2d 847, 854–860 (1972). Furthermore, the Court gave clear instructions that the evidence on

1. John Henry Glover was also charged in Count 1 with violation of 21 U.S.C. § 841(a) and § 812. Glover pled guilty and was not jointly tried with Williamson.

2. See 1 Wright & Miller, Federal Practice and Procedure § 222 (1969); 8 Moore, Federal Practice ¶ 14.03.

each count was to be considered separately in determining guilt. See United States v. Hatcher, 423 F.2d 1086, 1089–1090 (5th Cir., 1970). Thus Appellant's argument for severance based on possible cumulation of evidence is without merit.

■■ Williamson also contends that denial of severance complicated his defense strategy, since joinder made it impossible for him to testify in his own behalf on the assault charge without being subject to cross-examination about his participation in the drug transaction. In a leading case, *Cross v. United States*, 118 U.S.App.D.C. 324, 335 F.2d 987 (1964), the District of Columbia Circuit held that severance under Rule 14 was required where the accused wished to testify in his own defense on only one of two joined offenses which were clearly distinct in time, place, and evidence. *Cross* does not hold that severance is mandatory in any case where the defendant indicates he wishes to testify on some charges and to remain silent on others. Severance for this reason, as for any other, remains in the sound discretion of the trial court and no abuse of discretion may be found to exist unless the defendant can convincingly demonstrate that a genuine prejudice to his trial strategy outweighed considerations of judicial economy in proceeding with a single trial. Baker v. United States, 131 U.S.App.D.C. 7, 401 F.2d 958, 976–978 (1968).[3]

At trial, Williamson elected to take the stand to explain that his decision to drive away from the scene arose from a fear that he was being robbed by what he believed to be a band of shabbily dressed hippies. Under cross-examination, he vigorously and consistently denied involvement or knowledge of the drug transaction.[4] While the guilty verdict indicates the jury did not believe Williamson's denial, there is no support in the record for his contention that his conviction on the drug charge was made more likely by the fact he took the stand to explain his actions which led to the assault on the officer. In the absence of any evidence of substantial prejudice, we find no error, much less any abuse of discretion, in the denial of severance of trial on the two counts.

■■ (2) *Conviction for violation of 18 U.S.C. § 111.* It is undisputed that during his attempted flight Williamson struck state narcotics officer Davis with his automobile knocking Davis to the pavement. Since Davis was acting in cooperation with and under control of federal officers, in effecting an arrest for violation of the federal drug laws, assault against him was within the coverage of § 111. United States v. Heliczer, 373 F.2d 241, 249 (2nd Cir.), cert. denied 388 U.S. 917, 87 S.Ct. 2133, 18 L. Ed.2d 1359 (1967); United States v. Chunn, 347 F.2d 717, 721 (4th Cir. 1965). Williamson contends his conduct did not constitute a violation of § 111 since he had no actual knowledge of the federally protected status of the arresting officers. He points out that the strongest proof that he knew the person struck was an official was Agent Davis' testimony that he identified himself as a "state officer" when he first approached Williamson's automobile. Thus William-

3. See Bradley v. United States, 140 U.S. App.D.C. 7, 433 F.2d 1113, 1122–1124 (1969); Blunt v. United States, 131 U.S. App.D.C. 306, 404 F.2d 1283, 1288–1289, cert. denied 394 U.S. 909, 89 S.Ct. 1021, 21 L.Ed.2d 221 (1968) United States v. Weber, 437 F.2d 327, 334–335 (3rd Cir. 1970), cert. denied 402 U.S. 932, 91 S. Ct. 1524, 28 L.Ed.2d 867 (1971); United States v. Lee, 428 F.2d 917, 921 (6th Cir. 1970), cert. denied 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972); Wangrow v. United States, 399 F.2d 106,

112 (8th Cir.), cert. denied 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968); United States ex rel. Tarallo v. LaVallee, 433 F.2d 4, 6 (2d Cir. 1970) (state prosecution); *see also* United States v. Hatcher, *supra,* 423 F.2d at 1090.

4. Unlike the situation in *Cross,* the prosecution did not exploit cross-examination to introduce for purposes of impeachment any prejudicial evidence concerning the defendant's reputation or past criminal record.

son reasons that the jury had to find that he was initially unaware that Davis was acting in concert with federal authorities. However, as a series of recent decisions of this court have made clear, provided that the evidence is sufficient to establish the defendant's unlawful intention to resist or impede law enforcement officials,[5] knowledge of the official federal capacity of the person assaulted is unnecessary for conviction under § 111. United States v. Marcello, 423 F.2d 993, 1010 (5th Cir.), cert. denied, 398 U.S. 959, 90 S.Ct. 2172, 26 L. Ed.2d 543 (1970); United States v. Davis, 423 F.2d 974, 975, n. 1 (5th Cir.), cert. denied 400 U.S. 836, 91 S.Ct. 74, 27 L.Ed.2d 69 (1970); Burke v. United States, 400 F.2d 866 (5th Cir. 1968), cert. denied 395 U.S. 919, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969); Pipes v. United States, 399 F.2d 471 (5th Cir. 1968), cert. denied 394 U.S. 934, 89 S.Ct. 1207, 22 L.Ed.2d 464 (1969); Bennett v. United States, 285 F.2d 567, 570–571 (5th Cir. 1960), cert. denied 366 U.S. 911, 81 S.Ct. 1087, 6 L.Ed.2d 236 (1961).

■ Williamson additionally argues that the jury's verdict of acquittal on the charge of assault with a deadly or dangerous weapon, 18 U.S.C. § 111 ¶ ii, precluded a conviction on the lesser included offense of assault, 18 U.S.C. § 111 ¶ i, since the acquittal on the former charge necessarily indicated that the jury had found his conduct justified. Cf. Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The indictment charged Williamson with assaulting federal officers both with an automobile and with a .41 magnum revolver.[6] The jury was instructed that the revolver was as a matter of law a dangerous weapon and that the automobile may or may not have been a dangerous weapon depending upon the circumstances. The acquittal on the dangerous

weapon charge and conviction on the lesser offense indicates that the jury found that Williamson did not commit an assault with the revolver and that, while he did assault an officer with his automobile, the vehicle was not at the time a dangerous weapon. Thus there was no inconsistency between the verdicts and no application of collateral estoppel is required.

■ ■ (3) *Alleged testimonial and evidentiary errors.* The government's lead witness, Agent Shumard, testified to the content of a series of telephone conversations between himself and John Henry Glover during which the transfer of amphetamine capsules was negotiated. Since there was substantial independent evidence that Williamson was involved in the transaction as Glover's source, the incriminating statements made by Glover during these conversations were admissible under the exception to the hearsay rule which permits proof of statements made in furtherance of a joint criminal venture. *See*, e. g., Dutton v. Evans, 400 U.S. 74, 81, 91 S.Ct. 210, 215–216, 27 L.Ed.2d 213 (1970); Logan v. United States, 144 U.S. 263, 308–309, 12 S.Ct. 617, 632, 36 L.Ed. 429 (1892); 4 Wigmore on Evidence § 1079 n. 1 (1972). Williamson contends, however, that Shumard's testimony should not have been admitted because Shumard was not able to unequivocally identify Glover as the person to whom he had spoken over the telephone. This contention is wholly without merit in light of the strong circumstantial evidence that the person with whom Shumard spoke was in fact John Henry Glover and the corroborating admission by Glover, who was called as a defense witness, that he had spoken to the federal agent.

■ In relating the content of one conversation with Glover, Shumard repeated Glover's request that the delivery

---

5. *Cf.* United States v. Young, 464 F.2d 160, 163 (5th Cir. 1972).

6. The revolver was found on the seat of Williamson's car when he was taken into

custody. There was conflicting testimony whether he had held the revolver in his hand and pointed it at the officers during his attempt to escape from the motel parking lot.

be delayed because his source had to drive, rather than fly, to Atlanta. Glover explained that his source was "wanted by the law" and, because of his extraordinary physique (he weighed 400 pounds), would be readily identifiable by law enforcement officials if he attempted to travel by commercial airline. Williamson promptly requested a mistrial, or in the alternative that the "fugitive" remark be stricken, on the ground that he had been unduly prejudiced in the eyes of the jury by the testimony. Although the introduction of testimony which indirectly suggests that the defendant has committed other crimes is strongly disfavored, see Odom v. United States, 377 F.2d 853, 859–60 (5th Cir. 1967); McMillian v. United States, 363 F.2d 165 (5th Cir. 1966), Shumard's testimony in the present case does not constitute grounds for reversal. Glover's remark was admissible as a hearsay statement of an alleged co-participant since it was part of a request for a delay in delivery time, a delay which would facilitate the joint criminal enterprise. Williamson contends despite the general admissibility of the conversations that it was not necessary to repeat the highly inflammatory reference to the source's fugitive status. Placed in context, however, the reference serves an important and valid narrative purpose. Glover's statement to Shumard contains two clues concerning his source which, when taken with other evidence, pointed directly to Williamson. First, Glover said that his source weighed 400 pounds, an accurate description of the appellant, and, second, Glover explained that because of his source's readily identifiable size and fugitive status, the source would have to travel by private automobile rather than to fly. This second statement also identified Williamson who arrived at the scene of the transaction in his own out-of-state vehicle. The reference to his source as a fugitive which, connects the

two clues, gives Shumard's testimony narrative veracity which would have been completely lacking if Shumard had been limited to reciting, in isolation, Glover's description of his source's size and his mode of transportation. When the testimony suggesting other criminal acts by the defendant is introduced for some valid purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character, it is the function of the court to balance the prejudice to the defendant against the narrative or probative value of the other offense evidence. See McCormick, Law of Evidence, § 157 at 327–33. In the present case we find that the trial court did not err in denying Williamson's motion for a mistrial or in failing to strike the testimony or give immediate cautionary instructions—a procedure which could have served to magnify the importance of the remark.

■ Williamson complains of testimony concerning a single Dexamyl tablet found on his person at the time of his arrest and of the attempt of the government to introduce into evidence a butcher knife found in his automobile. Upon defendant's objection, the jury was instructed to disregard the testimony concerning the Dexamyl tablet, which was apparently unrelated to the commercial transfer of amphetamines. Despite this exclusion, defense counsel subsequently brought up the Dexamyl capsule on two occasions in order to show that Williamson lawfully possessed the drug for medical purposes. In light of the court's immediate instructions to disregard the officer's testimony concerning finding the tablet, any prejudice which may have been suffered by the defendant by casting him in the light of a drug user was as a result of his own election to persist in explaining the lawfulness of his possession.[7]

7. In light of the defendant's extraordinary weight, it is likely that a reasonable juror would have found his explanation that he had the Dexamyl as a prescription drug for weight control totally credible.

When the prosecutor sought to introduce the knife into evidence, the court refused to permit this action and properly instructed the jury to disregard it. Subsequently when the defendant took the stand, he was cross-examined about the knife. Assuming this cross-examination was improper in light of the court's previous ruling that the knife was irrelevant and thus inadmissible, the defendant personally waived his counsel's objection to this line of cross-examination and insisted on explaining why the knife was in his automobile. While the prosecution acted improperly in mentioning the inadmissible knife again in the jury's presence, this action in light of the defendant's response was harmless error.

(4) *Entrapment.* Williamson asserts that the court should have instructed the jury on the defense of entrapment. Williamson did not request nor object to the court's failure to give an entrapment charge. F.R.Crim.P. 30; *see* Costello v. United States, 252 F.2d 750, 751 (5th Cir. 1958). Furthermore, even if the issue had been preserved for appeal Williamson was clearly not entitled to such an instruction. His defense that he was innocent of any knowledge or involvement in the drug transfer is utterly inconsistent with the theory that he was entrapped into supplying the 20,000 capsules. It is the settled law of this Circuit that a defendant can not deny he has committed the offense and rely on the inconsistent defense of entrapment. United States v. Pickle, 424 F.2d 528 (5th Cir. 1970); McCarty v. United States, 379 F.2d 285 (5th Cir.), cert. denied 389 U.S. 929, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967); Marko v. United States, 314 F.2d 595 (5th Cir. 1963).

(5) *Conclusion.* We have reviewed defendant's asserted trial errors singly and *en masse* and found them to be without merit.

Affirmed.