Stuart A. HOLMES, Petitioner-Appellant,

v.

Ramon L. GRAY, Respondent-Appellee.

No. 74–1830.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1975.

Decided Nov. 26, 1975.

Charles F. Crutchfield, Edward Grimmer, Law Student, Notre Dame, Ind., for petitioner-appellant.

Bronson C. La Follette, Atty. Gen., William A. Platz, Asst. Atty. Gen., Madison, Wis., for respondent-appellee.

Before CASTLE, Senior Circuit Judge, and SWYGERT and TONE, Circuit Judges.

SWYGERT, Circuit Judge.

The question on this appeal is whether petitioner's Fifth Amendment right against self-incrimination was violated by consolidation of two charged offenses of armed robbery and attempted murder. The district court denied the petition for writ of habeas corpus filed by the petitioner, adopting the Wisconsin Supreme Court's opinion. We affirm.

Petitioner Stuart A. Holmes was charged with armed robbery and attempted murder in violation of sections 943.32(1)(b) and (2), 940.01, and 939.32, Wis.Stats. Separate complaints were originally issued and after preliminary hearings the state moved to consolidate the charges for trial. The motion was granted. On November 11, 1970, following trial by jury, the petitioner was found guilty on both charges, sentences to run consecutively.

The charges arose from a holdup of a Kroger food store at 1205 North 35th Street in Milwaukee around noontime on January 16, 1970. Mrs. Mabel Boggess, a checker, was in the store office when a Brink's truck pulled up and one of the guards wheeled a shopping cart of money into the store. She was helping the guard, Robert Berres, to unload the money into the safe when he told her to stand still, that a man had a gun. At that point the robber, whom she later identified to be the petitioner, placed an object at the back of her neck and proceeded to reach around her and remove the money from the safe, placing it in a large shopping bag. Mrs. Boggess saw only the robber's profile as he repeatedly reached around her. She observed that he was wearing a green stocking cap.

Berres testified that he was in the Kroger store placing money in the safe with the checker when the robbery began. Holmes, wearing black pants, a black rain-and-shine coat, and a gold turtleneck sweater approached him from behind, knocked his hand from his gun, took it, and proceeded to the safe where he began to withdraw money and place it in a large shopping bag. He had his own large caliber gun which Berres identified in court by a red tip on its front side.

After Holmes left the store Berres and his partner pursued him in their armored car. They encountered him on foot two blocks from the store on 37th Street. Upon seeing them he aimed his gun at the armored truck and ran between two houses. The Brink's men then spotted a squad car and informed the police thereof, describing Holmes. Berres did not see him again until ten minutes later when he had been apprehended by the police.

Police detective John Schroeder testified that in response to a call he and detective David Toefler went to the scene of the robbery. Several bystanders in Kroger's parking lot pointed in a southerly direction, indicating that Holmes had gone in that direction. Schroeder, dressed in plainclothes and carrying a shotgun, left his car. Following tracks in the snow he spotted Holmes carrying a bag, wearing a green knit cap, and a black rain-and-shine coat. He was running toward a blue van parked just west of 37th Street on Linden Place.

Officer Joseph Rao testified that he was in uniform in a police car when he was stopped by a Brink's truck and informed of the robbery. Rao left his car

and went on foot with a twelve-gauge Remington shotgun in his hand. Shortly thereafter he was picked up by plain-clothes detective Toefler in his car. Searching for the suspect they saw Schroeder walking toward the parked van. Toefler drove up behind the van and stopped at its left rear. Rao with shotgun in hand rushed to the van to see Holmes pointing a revolver toward the passenger window. Rao opened the door of the van and jammed his shotgun into Holmes' ribs. Holmes swung around with his gun in his hand. As he did so Rao testified, "I pushed the revolver away from me. He was pushing the revolver down. He used both hands, pushed the revolver down into the lower part of my stomach, at this time he squeezed the trigger." As he saw Holmes squeeze the trigger, Rao heard the gun click, at which time he dropped his shotgun and wrestled the revolver away from Holmes. During the struggle Holmes "sort of slid" from the seat of the car so that his feet were on the ground. The entire incident occured within a few seconds. When it was over Rao observed Holmes' knit cap stuck between the hammer and the frame of the .44-magnum revolver. He later found that there had been six bullets in the revolver's chamber.

### I

Petitioner contends that he was preju-diced by the joinder of both crimes and that an impermissible burden was creat-ed on his Fifth Amendment right against self-incrimination by forcing him to choose between testifying to both charges or not testifying at all. Peti-tioner stated at and during the trial that he desired to testify to the charge of attempted murder, but to remain silent on the charge of armed robbery. The applicable Wisconsin statute regarding joinder and severance is governed by section 971.12, Wis.Stat. (1969), which provides:

> (1) *Joinder of crimes.* Two or more crimes may be charged in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. When a mis-demeanor is joined with a felony, the trial shall be in the court with jurisdic-tion to try the felony.
>
> (3) *Relief from prejudicial joinder.* If it appears that a defendant or the State is prejudiced by a joinder of crimes or of defendants in a complaint, information or indictment or by such joinder for trial together, the court may order separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Because the Wisconsin statute is sub-stantially similar to Rules 8(a) and 14 of the Federal Rules of Criminal Procedure we will apply federal standards.[1]

It has never been denied that the join-der of offenses or defendants is not prej-udicial to some extent. *Hill v. United States,* 135 U.S.App.D.C. 233, 418 F.2d 449, 450 (1968); *cf. United States v. Wil-liamson,* 482 F.2d 508, 511 (5th Cir. 1973); *United States v. Meriwether,* 486

---

1. Fed.R.Crim.P. 8(a):

    Joinder of Offenses. Two or more of-fenses may be charged in the same indict-ment or information in a separate count for each offense if the offenses charged, wheth-er felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected togeth-er or constituting parts of a common scheme or plan.

    Fed.R.Crim.P. 14:

    Relief from Prejudicial Joinder. If it ap-pears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate tri-als of counts, grant a severance of defend-ants or provide whatever other relief justice requires.

F.2d 498, 504 (5th Cir. 1973), *cert. denied,* 417 U.S. 948, 94 S.Ct. 3074, 41 L.Ed.2d 668 (1974); *Robinson v. United States,* 148 U.S.App.D.C. 58, 459 F.2d 847, 855 (1972). It is because of such potential that evidence of one crime is inadmissible at the trial of another to prove a disposition to commit crime. *See* 1 Wigmore, Evidence §§ 192–94 (3d ed. 1940); McCormick, Evidence § 157. As we know, however, there are exceptions to the rule, 2 Wigmore, Evidence §§ 300–371 (3d ed. 1940), and joinder is justified when certain conditions are met.[2] Furthermore, there are presumptive benefits of judicial economy and expedition behind a liberal joinder rule. Nevertheless, it has been recognized that these benefits must be weighed against a defendant's right to have a trial free from substantial prejudice. *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85, 88 (1964); *Robinson v. United States,* 148 U.S.App.D.C. 58, 459 F.2d 847, 856 (1972). With these principles in mind we turn to the facts of the instant case.

Joinder here was proper because it is clear that both offenses arose from two closely connected transactions. We agree with the Wisconsin Supreme Court's characterization that "a successful holdup includes a successful getaway." *Holmes v. Gray,* 217 N.W.2d 657, 660 (1974). The more difficult question is whether the joinder was prejudicial and if so, was it a denial of due process and the right against self-incrimination within the meaning embraced by the Fifth Amendment? We do not think so.

The principal dangers which may prejudice a defendant by joinder were enunciated in *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85, 88 (1964):

(1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one.

*Accord, Bradley v. United States,* 140 U.S.App.D.C. 7, 433 F.2d 1113, 1117 n. 12 (1969); *Blunt v. United States,* 131 U.S.App.D.C. 306, 404 F.2d 1283, 1288 (1968), *cert. denied,* 394 U.S. 909, 89 S.Ct. 1021, 22 L.Ed.2d 221 (1969); *Baker v. United States, per curiam,* 131 U.S.App.D.C. 7, 401 F.2d 958, 974 (1968). A corollary of *Drew,* however, is that separate trials offer no panacea where the evidence of each of the crimes charged would have been admissible in separate trials:

If, then, under the rules relating to other crimes, the evidence of each of the crimes on trial would be admissible in a separate trial for the other, the possibility of "criminal propensity" prejudice would be in no way enlarged by the fact of joinder. *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85, 90 (1964).[3]

*Accord, United States v. Williamson,* 482 F.2d 508, 511 (5th Cir. 1973); *Robinson v. United States,* 148 U.S.App.D.C. 58, 459 F.2d 847, 855–56 (1972); *Baker v. United States, per curiam,* 131 U.S.App.D.C. 7, 401 F.2d 958, 974 (1972); *Bradley*

---

**2.** *See supra* note 1.

**3.** In *Baker v. United States, per curiam,* 131 U.S.App.D.C. 7, 401 F.2d 958, 975 (1968), the court said:

[T]hat standard does not require that every item of evidence relating to one offense be admissible in a separate trial for the other, but rather looks in a broader sense to whether the rules relating to "other crimes" evidence have been satisfied.

*v. United States*, 140 U.S.App.D.C. 7, 433 F.2d 1113, 1117 (1969). Under such circumstances any claim of substantial prejudice is without merit. In the instant case evidence of the attempted murder would have been relevant to the getaway aspect of the armed robbery; evidence of the armed robbery would have been relevant to the motive of the attempted murder.

The main case on which the petitioner relies to support his position is *Cross v. United States*, 118 U.S.App.D.C. 324, 335 F.2d 987, 989 (1964).[4] There the District of Columbia Circuit said:

> Prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence.

Our decision in no way vitiates the force behind the *Cross* ruling. Although there is no clear definition in *Cross* of what "clearly distinct" means, the use of the conjunctive in the sentence indicates that the different offenses must be separate events as to three factors—time, place, and evidence. We do not view the two crimes here committed within a twenty-minute period with overlapping evidence as meeting the above criteria. Rather, we agree with the Fifth Circuit's view in *United States v. Williamson, supra,* at 512, that severance is not mandatory every time a defendant wishes to testify to one charge but to remain silent on another. If that were the law, a court would be divested of all control over the matter of severance and the choice would be entrusted to the defendant. *Baker v. United States, per curiam,*

131 U.S.App.D.C. 7, 401 F.2d 958, 976 (1968).

In *United States v. Weber,* 437 F.2d 327 (3d Cir. 1970), *cert. denied,* 402 U.S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971), the defendant argued that he had been compelled to testify in violation of the Fifth Amendment when he had wished to testify to only one charge. The court held that the defendant had made a tactical decision to testify to both charges and could not later claim that he had been forced to give up his right against self-incrimination. In reaching its decision the court relied on *Williams v. Florida,* 399 U.S. 78, 83–84, 90 S.Ct. 1893, 1897, 26 L.Ed.2d 446 (1970), where the Supreme Court commented on the relationship between a defendant's trial tactics and the Fifth Amendment:

> The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. . . . That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.

The same reasoning is applicable in the instant case. Where joinder is proper and there has been found no substantial prejudicial effect, the Fifth Amendment is not violated because a defendant must elect to testify as to both charges or to none at all. The petitioner has failed to show that the trial court abused its discretion by denying his motion for severance.

The order denying the writ of habeas corpus is affirmed.

---

**4.** *Cross* was not decided on Fifth Amendment grounds.