**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward MULLEN, Defendant-Appellant.**

**No. 76-1679.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 21, 1976.

Decided Feb. 11, 1977.

Thomas E. Jackson, John W. Tapp, William L. Woodard, Detroit, Mich., for defendant-appellant.

Philip Van Dam, U. S. Atty., J. Brian McCormick, Frederick S. Van Tiem, Detroit, Mich., for plaintiff-appellee.

Before EDWARDS, LIVELY and ENGEL, Circuit Judges.

PER CURIAM.

█ Edward Mullen appeals from jury convictions on two charges of bank robbery. Though the robberies involved different banks and occurred 19 days apart the two charges were tried together over the objection of Mullen who had moved for a severance pursuant to Rule 14, Fed.R.Crim.P. We find no abuse of discretion in the district court's denial of the motion for a severance.

Following a trial at which the jury was unable to agree the court declared a mistrial and set the case for retrial within two weeks. Mullen made a motion that he be furnished a transcript of the first trial at government expense. Mullen also made a motion for a continuance until a transcript could be prepared. At a hearing on these motions counsel for Mullen stated that he desired the transcript "primarily for impeachment purposes and also to do whatever preparation for the new trial was necessary in view of what might have been in those transcripts."

The district court denied both motions, noting that Mullen was in jail for inability to make bond and that the case had been set for immediate retrial because of this fact. The district court stated that since the second trial was scheduled to begin so soon after the mistrial occurred, counsel should rely on his trial notes and his recollection. The court also advised that the reporter at the first trial would be available and that "[i]f there is an impeachment situation that arises the witness can be confronted through the reporter's notes with what he said at the earlier trial."

█ The second trial began the next day and resulted in convictions on both charges. During the second trial government counsel had at least a partial transcript of Mullen's testimony at the first trial and used it in cross-examination. The prosecution may not enjoy such an advantage. As an indigent defendant Mullen was entitled to a transcript of the first trial if it was needed for an effective defense upon retrial, and he was not required to make a particularized showing of need. *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). The Supreme Court affirmed in *Britt* on a finding that there was ". . . available an informal alternative which appears to be substantially equivalent to a transcript." *Id.* at 230, 92 S.Ct. at 435. We do not believe that Mullen had available any resource which was substantially equivalent to the partial transcript of the first trial which the prosecution had in its possession. Though the two trials took place within a few weeks, there were at least 12 government witnesses at the first trial and 11 who testified at the second trial. At best counsel for the defendant Mullen had "limited access to the court reporter during the course of the second trial," *Britt, supra,* 404 U.S. at 229, 92 S.Ct. at 434; and no opportunity to use a transcript in preparation for the later trial.

█ In *Martin v. Rose,* 525 F.2d 111, 113 (6th Cir. 1975), this court stated that ". . . we can think of no more valuable document for defense counsel approaching a contested trial than the record of the previous trial of his client for the same exact crime with which he is charged again . . . ." We fully appreciate the desire of the District Judge to avoid unnecessary delay in retrial of a jailed defendant. However, the motion for a continuance indicated that Mullen was willing to endure this hardship in order to obtain the transcript. Since Mullen had no equivalent substitute, it was prejudicial error to require him to undergo the second trial without the requested transcript.

The judgment of the district court is reversed, and the case is remanded for a new trial.

ENGEL, Circuit Judge, concurring in part and dissenting in part.

I agree that obedience to *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971) requires us to hold that the trial judge, under these particular circumstances, committed reversible error in denying the defendant's application for

funds to procure a trial transcript. Mullen was indigent while the government operated under no such handicap and was able to obtain at least portions of the trial transcript in the brief interval between the two trials. Presumably Mullen, had he possessed independent means, could have done the same.

In concurring, I believe it should be made clear that our ruling does not involve a situation where the trial court refuses to delay a retrial for a sufficient length of time to enable testimony to be transcribed, thereby preventing all parties from having access to a transcript, regardless of financial means. Under those circumstances an equal protection issue would not be involved. The realities of court administration teach us that the procurement of a trial transcript may not always be promptly forthcoming and in heavily burdened metropolitan districts will usually not be. The demands of the Speedy Trial Act and the right to have a transcript upon retrial of a lawsuit must inevitably conflict. Where a case must be retried there is a great advantage to the defendant, the government, and the public in attending promptly to it. I would preserve as much discretion as possible in the trial judge to deal fairly and realistically with this problem as it may be presented to him at the time. While the record here suggests that a desire to avoid delaying retrial was a factor in the judge's decision, his denial of the application was specifically based upon the incorrect conclusion that the alternatives were sufficient and that the expense was unjustified without an assurance of particular need.

A more fundamental basis for reversal, it seems to me, is that the defendant was required in one lawsuit to defend two entirely separate criminal charges under circumstances in which he has made a substantial showing of prejudice.

Since both charges involved robberies of banks, they are clearly offenses of the "same or similar character" within the meaning of Rule 8(a), Federal Rules of Criminal Procedure, and were, therefore, properly joined initially.[1]

However, under Rule 14, Federal Rules of Criminal Procedure, the court may order separate trials of counts "if it appears that a defendant or the government is prejudiced by a joinder of offenses . . . ." The general test to determine whether severance is warranted involves weighing the possible prejudice to the defendant from the joinder against the public interest in avoiding duplicitous, time consuming trials in which the same factual and legal issues must be litigated. We have held that decisions by a trial judge on Rule 14 motions will be reversed only if there has been an abuse of discretion. *United States v. Lee,* 428 F.2d 917 (6th Cir. 1970), *cert. denied,* 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972).

Of the three grounds for joinder under Rule 8(a), that based on the "similar character" of offenses combines the greatest danger of real prejudice to a defendant with the least promise of judicial economy. Very little time is saved since the charges usually involve different transactions. It has been noted:

> Ordinarily the only time saved by such joinder is the selection of one jury rather than two. Except for character witnesses, the evidence will usually be entirely separate.

8 Moore, Federal Practice ¶ 8.05[2] at 8–19 (1976).

*See* Note, "Joint and Single Trials under Rules 8 and 14 of the Federal Rules of Criminal Procedure," 74 Yale L.J. 553, 560 (1965).

Three potential sources of prejudice to the defendant by joinder of two or more offenses solely on this similar character theory are described in *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85, 88 (1964):

1. Under Rule 8(a), two or more offenses may be charged in the same indictment or information if the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

(1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find.

Because of the inherent potential prejudice in such circumstances, the American Bar Association has proposed that the right to severance be automatic upon motion of the defense.[2]

While the danger of the jury cumulating the evidence was at least minimized by the trial judge through presentation of the proof of the two crimes on separate days, a consideration of the three factors in *Drew,* as applied here and in other circuits, persuades me that it was an abuse of discretion to have denied severance.

The problems inherent in joinder of similar offenses are especially clear where the defendant has a good defense on one charge (and perhaps is innocent), but no defense on the other. 8 Moore, Federal Practice ¶ 14.-03 at 14–11 (1976). The dilemma is best stated in *Cross v. United States,* 118 U.S. App.D.C. 324, 335 F.2d 987, 989 (1964):

> Prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence. His decision whether to testify will reflect a balancing of several factors with respect to each count: the evidence against him, the availability of defense evidence other than his testimony, the plausibility and substantiality of his testimony, the possible effects of demeanor, impeachment,

and cross-examination. But if the two charges are joined for trial, it is not possible for him to weigh these factors separately as to each count. If he testifies on one count, he runs the risk that any adverse effects will influence the jury's consideration of the other counts, although he may benefit on only one. Moreover, a defendant's silence on one count would be damaging in the face of his express denial of the other. Thus he may be coerced into testifying on the count upon which he wishes to remain silent.

This form of prejudice to the defendant is present here in marked degree.

I recognize that other courts have held that severance is not mandatory every time a defendant wishes to testify to one charge and not the other. If this were enough to require severance, the trial court would be divested of much control over the suit. *Holmes v. Gray,* 526 F.2d 622, 626 (7th Cir. 1975); *United States v. Williamson,* 482 F.2d 508, 512 (5th Cir. 1973); *Baker v. United States,* 131 U.S.App.D.C. 7, 401 F.2d 958, 976 (1968), *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). Nevertheless this is an important factor to be weighed and becomes more so where it is apparent, as I believe it is here, that the defendant's expressed desire was not a subterfuge to obstruct the trial of the case, but was an intelligent approach to the defense of the two charges. The government claims that the showing made by the defendant was not strong, citing *Baker v. United States, supra,* 401 F.2d at 977, which indicates that there is no need for a severance until the defendant convincingly shows that he has "important testimony to give concerning one count and strong need to refrain from testifying on the other". In *Baker,* however, the court decided that evidence of the joined offenses would have

2. Section 2.2 of the ABA Project on Minimum Standards for Criminal Justice, "Standards Relating to Joinder and Severance," (1967) provides:

§ 2.2 Severance of offenses.
(a) Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the

defendant shall have a right to a severance of the offenses.
The ABA commentary on the proposed standard recognizes that "joinder together for one trial of one or two offenses of the same or similar character when the offenses are not part of a single scheme or plan has been subjected to severe criticism over the years."

been mutually admissible in separate trials, while I would decide that factor differently here. At any rate, even if Mullen's pretrial showing was not definite enough, I think that his actual testimony during the first trial sufficiently revealed his predicament.[3]

Potentially the defendant might also be prejudiced in a trial of two entirely unrelated charges by the jury's use of the evidence of one of the offenses to infer a criminal disposition on the part of the defendant to commit the other. The injection into a trial of proof that the defendant has also been guilty of the commission of other crimes has been consistently condemned in the absence of any legitimate reasons for its injection. *United States v. Semak,* 536 F.2d 1142 (6th Cir. 1976); *United States v. Wiley,* 534 F.2d 659 (6th Cir. 1976); *United States v. Blanton,* 520 F.2d 907 (6th Cir. 1975); *United States v. Poston,* 430 F.2d 706 (6th Cir. 1970); *United States v. Rudolph,* 403 F.2d 805 (6th Cir. 1968).

Frequently when two similar charges are joined for trial, their relationship enables the prosecutor to introduce evidence of one of the crimes in the trial of the other to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Rule 404(b), Federal Rules of Evidence. Thus if the evidence of the two crimes is admissible under Rule 404(b) the danger from trying both offenses together is largely dissipated. It appears from the record in this case that the trial judge was persuaded to deny severance because he believed that the evidence could be brought in to "show intent, to show state of mind".[4] Upon the facts here, I cannot agree.

The issue at trial was primarily one of identity and at no time was the intent of the robber disputed. The government argues that the evidence was relevant to the identity and *modus operandi* of the robber, but an examination of the record here does not persuade me that it would have been admissible in separate trials.

Here the evidence showed robberies occurring 19 days apart at different banks, although in the same general vicinity. Witnesses described the culprit in each as a young slim black male with prominent cheekbones and of a height between five-feet-six and five-feet-ten, with weight from between 145 and 160 pounds. In both cases, money was demanded from the teller, and a withdrawal slip was left behind each time, although under different circumstances. Each time a light colored coat was worn as was a knit hat. On the other hand, a sawed-off shotgun was used in the first robbery while the second robber was armed possibly with a knife or was unarmed. In one case the robber wore red slacks, while in the other the slacks went unnoticed but he wore gloves. The crimes occurred at different times of the day. One robbery was initiated by a note (on the back of a withdrawal slip) demanding the money, while the other was by a vocal demand. In one robbery the teller was asked to put

---

**3.** Prior to the first trial, Mullen's counsel indicated to the court that the defendant would probably desire to testify in his own behalf on count II, whereas he was uncertain as to whether he would testify on count I. Since severance was denied, the defendant elected to testify as to both counts, but an objection was preserved and the motion was renewed before the second trial. By that time, of course, the trial judge had an opportunity himself to understand the reasons for the different approaches. It is apparent from the record that Mullen had a reasonably effective alibi defense on the second count and that his testimony with respect to that defense could be particularly effective. No such benefit attended the proof on the first count, and it certainly would have been reasonable for Mullen to conclude that he would elect not to testify on the first count, if he had the choice, but to stand on his presumption of innocence and thus preclude the jury from learning of his prior criminal record.

**4.** The trial judge concluded:

I am faced with this situation: that Mr. McCormick [the prosecutor] can, if we try, say, one count separate from the other, I think he can bring in the circumstances of the other count to show intent, to show state of mind. And if he can do that, and it's not clear that your client very sharply has a desire to take the stand in one case but not take the stand in another case, I don't see where there is any prejudice.

money in a brown paper bag and in the other, no bag was used. The robber of the first bank exited and walked around the corner. In the second, he walked out and drove away in a taxi.

Whether the defendant was the person who committed the offense in each case can be proved indirectly by showing his complicity in a "design or plan" associated with both robberies. This label is used for certain overlapping situations which include (1) a common or connected or inseparable plan or scheme or transaction, (2) a continuing plan or conspiracy, and (3) a unique plan or scheme or pattern. 2 Weinstein, Evidence ¶ 404[09] (1975). Certainly there is no claim that these two robberies were part of a single continuous criminal act or part of a larger conspiracy. Instead the argument is based on a claim that the crimes involved a unique pattern from which the jury was able reasonably to infer that both were committed by the same person. The evidence here falls short of earmarking the robberies as the handiwork of the defendant:

> [M]uch more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. *The device used must be so unusual and distinctive as to be like a signature.*

> McCormick, Evidence § 190 at 449 (1972) (emphasis added)

Similarly, Weinstein explains:

> Nevertheless, there are many instances when details of the crime show an individuality that, if repeated, are highly probative of the conclusion that they were committed by the same person. While not rising to the same certainty of chisel marks or rifling marks, they are no different as identifying marks than the fact that the defendant limped or had a scar over his eye. If, for example, the same or a similar false name is used, the check is almost the same amount, the same kind of purchase is made in the same kind of store and the approach is the same, there is good reason to suspect identity. Crimi-

nals are not generally highly intelligent and creative artists. They tend easily to fall into detailed patterns serving as "prints" of their crimes. The question for the court is whether the characteristics relied upon are sufficiently idiosyncratic to permit an inference of pattern for purposes of proof.

> 2 Weinstein, Evidence ¶ 404[409] (1975) (footnote omitted). Compared to other cases in which the issue has arisen, it seems that the facts of this case align themselves with those in which the evidence has been ruled inadmissible. *See United States v. Foutz,* 540 F.2d 733 (4th Cir. 1976); *Hills v. Henderson,* 529 F.2d 397 (5th Cir. 1976); *United States v. Carter,* 154 U.S.App.D.C. 238, 475 F.2d 349 (1973); *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). On the other hand, they are distinguishable from those in which the proof was held admissible, as in *United States v. Moody,* 530 F.2d 809 (8th Cir. 1976); *United States v. Navedo,* 516 F.2d 293 (2d Cir. 1975); *United States v. Johnson,* 382 F.2d 280 (2d Cir. 1967); *Bradley v. United States,* 140 U.S.App.D.C. 7, 433 F.2d 1113 (1969); *Holmes v. Gray,* 526 F.2d 622 (7th Cir. 1975). In short, I would conclude that there was nothing so idiosyncratic in the *modi operandi* of the robberies nor such a similarity of the descriptions of the robber to have justified the introduction of the evidence in separate trials of the offenses. Thus Mullen suffered additional prejudice by the joint trial of the two robberies.

That the question of guilt in these cases was extremely close is apparent from the record. The first trial resulted in a hung jury. In the second trial, after lengthy deliberations, the jury reported to the trial judge that it was unable to reach a verdict as to either count, and it was only after further instructions from the court that the jury was able to return a verdict of guilty as to both charges. If there was potential prejudice in the joinder of the two charges, it obviously had to exist here. Whatever might be said about the propriety of refusing severance at the first trial, it is apparent to me that on retrial, it was an

abuse of discretion not to sever the two charges.[5]

In addition to reversing and remanding, I would require severance.

---

5. The difficulties in predicting potential prejudice before trial are pointed out in the Note, "Joint and Single Trials," *supra,* which generally supports the ABA proposed standard. The author suggests that when the motion for separate trials is made, the court might "inspect the prosecution's evidence *in camera* to determine whether the other crimes test had been met." *Id.* at 559. Here, of course, the trial judge had the benefit of seeing the evidence from the first trial and he must have been aware that the issue of guilt was not clear since the jury in the first case was unable to agree upon a verdict.