848 F.2d 195
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby LYNCH, Defendant-Appellant.
 Nos. 87-1432, 87-1656.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1988.
 
 Before KRUPANSKY and DAVID A. NELSON, Circuit Judges, and JAMES D. TODD, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-appellant Bobby Lynch (Lynch) appealed from his convictions on counterfeiting charges following two separate trials in the Eastern District of Michigan. In No. 87-1432, Lynch was convicted for selling counterfeit United States currency in violation of 18 U.S.C. Sec. 472 and for conspiring to sell counterfeit currency in violation of 18 U.S.C. Sec. 371. In No. 87-1656, Lynch was convicted for possession of counterfeit currency in violation of 18 U.S.C. Sec. 472. The records disclosed the following facts.
 
 
 2
 At approximately 6:35 p.m. on October 21, 1986, United States Secret Service Special Agent Anthony Triplett (Triplett), who was working in an undercover capacity to penetrate a ring of counterfeiters who had been using high quality photocopying equipment to counterfeit United States currency, met Waad Stepho (Stepho) and Louis Zia (Zia) in a Big Boy Restaurant in Detroit, Michigan to negotiate the purchase of $15,000 in counterfeit currency. During the meeting, Stepho represented to Triplett that he and Zia could not transact any business without first obtaining the approval of a partner. Accordingly, Stepho left the table where the three were seated at least twice during the meeting purportedly to contact his partner by telephone. Before the meeting concluded, Stepho informed Triplett that his associate, who had possession of the counterfeit currency, was otherwise occupied in an illegal narcotics transaction and that delivery of the counterfeit currency would be delayed. Stepho advised Triplett that he would obtain the counterfeit currency and return to the restaurant at a later time.
 
 
 3
 When Stepho and Zia departed from the restaurant, they were placed under surveillance by Secret Service agents who observed them travel to Lynch's residence, where he joined them to return to the restaurant. Stepho and Zia entered the restaurant and informed Triplett that the counterfeit currency was in an automobile in the parking lot. Triplett then accompanied the two outside where he observed Lynch exit Stepho's and Zia's vehicle. Stepho introduced Lynch to Triplett as "Bobby," whereupon Triplett inquired of Lynch as to the whereabouts of the counterfeit currency. Lynch pointed to the floor of the passenger side of the automobile, and Triplett removed the currency from the car. Triplett advised Lynch that Stepho had agreed to sell him $15,000 in counterfeit currency for $500 or he could obtain it without a payment if he could repair their broken photocopying machine. Lynch "strongly disagreed," and after several minutes of discussion, Lynch and Triplett arrived at a compromise whereby Lynch would sell $15,000 in counterfeit currency for $500 if Triplett could repair the machine; otherwise, Triplett would be required to pay $1,500. During the conversation, Lynch informed Triplett that he and Stepho owned the photocopying machine and that he, Lynch, printed the currency. After the deal had been concluded, Secret Service agents arrested Zia, Stepho, and Lynch.
 
 
 4
 Lynch's trial began on February 6, 1987. Subsequent to jury selection but prior to the presentation of evidence, Lynch's attorney moved for substitution of counsel and for the production of the transcript of Stepho's trial which had concluded on February 2, 1988.[1] The court denied both motions. Lynch renewed his motion for a copy of the Stepho transcript at the close of the government's case in chief,[2] and the court again denied the motion.
 
 
 5
 The jury returned a verdict of guilty on both counts, and Lynch was sentenced to 18 months imprisonment on each with the sentences to be served concurrently. Lynch thereafter commenced a timely appeal, i.e., No. 87-1432.
 
 
 6
 On the evening of September 22, 1986, Officer Jerome Jenkins of the Detroit, Michigan Police Department (Jenkins) and his partner Officer Terence Mahone were on routine patrol in Detroit when they observed Lynch, driving a pickup truck, illegally cross three lanes of traffic to stop at the curb where a known prostitute and an unknown male entered the truck. As the defendant drove away, Jenkins activated the emergency lights on his patrol car and interrupted the truck to issue a traffic citation for failure to signal.
 
 
 7
 Jenkins exited his vehicle and approached the driver's side of Lynch's truck when he observed what appeared to be a handgun on the floor of the truck. Jenkins and Mahone ordered Lynch and his companions out of the vehicle. Jenkins thereupon opened the door on the driver's side of the vehicle as Lynch leaned forward in an effort to conceal an open envelope under the seat. Jenkins assisted Lynch from the vehicle and immediately conducted a "pat-down" search of his person.
 
 
 8
 Jenkins retrieved what appeared to be the handgun, which was in fact a cigarette lighter resembling a revolver. A telephone beeper and the envelope were situated within twelve inches of the "handgun." Several $20 denominations of currency were protruding from the open envelope, the edges of which were unevenly cut. Jenkins observed identical serial numbers on the protruding currency which caused him to conclude that the currency was counterfeit.
 
 
 9
 Prior to his trial, Lynch moved to suppress the counterfeit currency seized from his truck. After a hearing on February 5, 1987, the court denied the motion. Trial commenced on February 17, 1987, and the prosecution called only two witnesses, Jenkins and Secret Service Agent Neil Kennings (Kennings). Kennings testified that he had inspected the confiscated currency and found that 34 of the 35 were average photocopy reproductions of $20 denominations of U.S. currency. He further testified that he questioned Lynch after having advised him of his rights, and Lynch had stated that on the evening in question he met an unidentified male at a retail store and offered to give him a ride to his car. Along the way, the unidentified male requested Lynch to pick up his girlfriend because the police were harassing her. Lynch further stated that the beeper belonged to the unknown male whom he had agreed to drive to his automobile. Lynch could not identify the location of the retail store where he met his traveling companion.
 
 
 10
 During the course of cross-examination, the following exchange occurred between Kennings and Lynch's counsel:
 
 
 11
 Q. When you interviewed Mr. Lynch over at the Eleventh Precinct did he tell you that he had the beeper for his construction job?
 
 
 12
 A. No. As a matter of fact, he admitted to me he sold drugs, marijuana, as a matter of fact.
 
 
 13
 Q. Now, in his saying--you said he told you he sold drugs or sold marijuana?
 
 
 14
 A. Yes, sir.
 
 
 15
 Q. Look at your police report or memorandum.
 
 
 16
 A. I'm sure it does not say that in there.
 
 
 17
 Q. It's not in your report?
 
 
 18
 A. No but I remember him specifically saying that.
 
 
 19
 No immediate objection was entered to Kenning's responses concerning the beeper until after the close of the government's evidence and out of the presence of the jury, Lynch moved for a mistrial charging that he had not been advised of the statement concerning illegal narcotics during pretrial discovery. The government responded by advising this court that Lynch was aware of the government's knowledge concerning the beeper and its use by Lynch in furthering his drug trafficking because during pretrial discovery in case No. 87-1432, the government had disclosed his co-defendant's (Stepho) statement that he contacted Lynch on his beeper while he was delivering drugs. The court denied the defendant's motion, and upon the jury's return, instructed the members to disregard Kennings' testimony concerning the beeper.
 
 
 20
 Lynch was convicted and sentenced to two years imprisonment with the sentence to run consecutively with the sentence imposed on his other convictions. He thereafter commenced a timely appeal, i.e., No. 87-1656, which was consolidated with No. 87-1432.
 
 
 21
 On appeal in No. 87-1432, Lynch asserted that the district court erred by denying his motion for a continuance to replace his court appointed counsel with counsel of his own choice and that the denial deprived him of his Sixth Amendment right to counsel of his own choosing.
 
 
 22
 While an accused's right to choose counsel to assist him at trial is an essential component of the sixth amendment right to assistance of counsel, it is beyond peradventure that such right is not absolute. When an accused seeks substitution of counsel in mid-trial, he must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution.
 
 
 23
 Consideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.
 
 
 24
 * * *
 
 
 25
 * * *
 
 
 26
 Whether a continuance is appropriate in a particular case depends on the facts and circumstances of that case, with the trial judge considering the length of delay, previous continuances, inconvenience to litigants, witnesses, counsel and the court, whether the delay is purposeful or is caused by the accused, the availability of other competent counsel, the complexity of the case, and whether denying the continuance will lead to identifiable prejudice.
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 Such motions are directed to the sound discretion of the trial judge and will be reversed only for an abuse of discretion.
 
 
 30
 Wilson v. Mintzes, 761 F.2d 275, 280-81 (6th Cir.1985) (emphasis added) (citations and footnote omitted).
 
 
 31
 The record, on its face, is insufficient to warrant a finding that the district court abused its discretion by denying Lynch's motion for a continuance to substitute counsel of his own choice for his court appointed attorney. His attorney merely stated that Lynch "may be also hiring his own attorney; he may be able to come up with the funds." He did not state that there was a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with his client. When the record contains no justification for a last minute substitution of counsel and the defendant has asserted no valid motive therefor, the district court is not required to inquire into the matter further before denying the motion. Brown v. United States, 264 F.2d 363, 366 (D.C.Cir.) (en banc ), cert. denied, 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959). Accordingly, this argument is without merit.
 
 
 32
 As his second assignment of error in No. 87-1432, Lynch alleged that the district court erred by not providing him with a transcript of his co-defendant's trial which had concluded the day before his trial commenced. While "an indigent defendant ... [is] entitled to a transcript of [his] first trial if it [is] needed for an effective defense upon retrial ...," United States v. Mullen, 550 F.2d 373, 374 (6th Cir.1977) (per curiam) (citing Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971)), "there is no authority requiring the [government] to make available to an indigent defendant a transcript of the testimony of a third party's [co-defendant's] trial." Elliott v. Morford, 557 F.2d 1228, 1232 (6th Cir.1977), cert. denied, 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978). Accordingly, this assignment of error is without merit as well.
 
 
 33
 In No. 87-1656, Lynch asserted that the district court erred by not suppressing the evidence confiscated by Jenkins from his truck, i.e., the counterfeit currency. The government's justification for the seizure of the evidence was that it was in the officer's "plain view." See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (police may seize items in plain view without a warrant if the initial intrusion by the officers was lawful, the discovery of the incriminating evidence was inadvertent, and the incriminating nature of the evidence was immediately apparent).
 
 
 34
 It is beyond peradventure that Jenkins' initial intrusion into the passenger compartment of the truck to retrieve what he believed to be a weapon was lawful. See Michigan v. Long, 463 U.S. 1032, 1049-50, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983) (police officer may conduct limited search of vehicle passenger compartment for weapons after making a lawful stop if he has reason to believe that the suspect is dangerous and may gain control of the weapon) (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Furthermore, the discovery of the envelope was inadvertent. Jenkins discovered the counterfeit currency only after lawfully entering the passenger compartment of the truck to confiscate what he believed to be a handgun.
 
 
 35
 Lynch's only challenge to the seizure of the currency was that it was not immediately apparent to Jenkins at the time of the seizure that it was counterfeit. See United States v. Szymkowiak, 727 F.2d 95 (6th Cir.1984) (illegal nature of evidence was not immediately apparent where it had to be seized and inspected prior to ascertaining its illegality). See also United States v. Beal, 810 F.2d 574 (6th Cir.1987) (same); Arizona v. Hicks, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (search unreasonable and not within plain view exception to warrant requirement where officers had to move stolen equipment to inspect serial numbers to determine that equipment was indeed stolen). The argument, however, is contrary to the facts as developed by Jenkins' testimony at the suppression hearing as hereinbefore related. "If, while conducting a legitimate Terry [v. Ohio, supra ] search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." Michigan v. Long, 463 U.S. at 1050, 103 S.Ct. at 3481. Accordingly, Jenkins properly seized the counterfeit currency, and this assignment of error is without merit.
 
 
 36
 Lynch also asserted that the trial court abused its discretion by denying his motion for a mistrial following Kennings' examination responses to his (Lynch's) lawyer's interrogation concerning the telephone beeper seized from his truck. The refusal of the trial court to grant a mistrial after a witness has injected extraneous and potentially prejudicial information into the trial is reviewed for abuse of discretion. United States v. Andrea, 538 F.2d 1255, 1257 (6th Cir.1976) (per curiam).
 
 
 37
 The district court did not abuse its discretion by denying Lynch's motion for a mistrial. The prosecution did not at any time during trial refer to Lynch's involvement in the sale of illegal narcotics. The error, if any, was induced by Lynch's counsel. Only upon cross-examination, in response to defense counsel's questioning, were the responses elicited. The court cautioned the jury to disregard the statement, and no further mention of Kennings' answer was made. Accordingly, this assignment is without merit.[3]
 
 
 38
 For the foregoing reasons, the judgments of the district court are hereby AFFIRMED.
 
 
 
 *
 The Honorable James D. Todd, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 The court had severed Stepho's and Lynch's trials on January 29, 1987
 
 
 [2]
 At trial, Triplett played a tape recording of the first meeting between himself, Stepho, and Zia at the Big Boy restaurant. Triplett explained that the second meeting, including the conversation in the parking lot with Lynch, was not tape recorded because he had turned the machine off after Zia and Stepho left the restaurant and he was unable to reactivate it unnoticed after they returned
 
 
 [3]
 On appeal, Lynch asserted that the government failed to disclose this aspect of Lynch's statement to defense counsel during pretrial discovery in violation of Fed.R.Crim.P. 16. Rule 16 requires the government to disclose only statements relevant to the prosecution. The statement at issue herein was not relevant to Lynch's prosecution for possession of counterfeit currency, and indeed the government did not seek to introduce any evidence of Lynch's involvement with illegal narcotics. Accordingly, this argument is without merit