UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles W. JONAS, Defendant-Appellant.

No. 75–1904.

United States Court of Appeals,
Seventh Circuit.

Heard April 30, 1976.

Decided Aug. 18, 1976.

Terence MacCarthy, Federal Defender Program, Michael D. Sher, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U. S. Atty., Jeffrey J. Kent, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and BAUER, Circuit Judges and CAMPBELL, Senior District Judge.*

BAUER, Circuit Judge.

The question presented on this appeal is whether the trial court erred in denying the defendant's motion for the preparation of a transcript pursuant to Title 18, Section 3006(e)(1)[1] following a mistrial. Because we believe the trial judge erred in denying the transcript we reverse and remand the case for a new trial.

Defendant Jonas was charged in a one count indictment with knowingly and unlawfully receiving, concealing, and storing United States Treasury bills in violation of Title 18 U.S.C. § 2315. The court appointed the Federal Defender Program to provide legal representation for the defendant.

Two trials were held. The case was initially called for trial on April 28, 1975, with Assistant Federal Defender Jean Powers Kamp representing the defendant. Following a one day trial the jury returned its verdict, finding the defendant guilty of the offense charged in the indictment. Defendant thereafter filed his motion for a new trial and supporting memorandum, which motion was granted by the court on the ground that the government improperly failed to disclose the identity of one of its witnesses.

Subsequently the case was transferred to two other Federal Defender attorneys who requested that the trial court authorize preparation of the transcript of the first trial, without costs to the defendant. The defendant did not seek the entire transcript, but limited his request to the portions containing the testimony of the witnesses who testified at the first trial. The government did not object to the request.

The court denied defendant's motion after a full briefing of the question, noting that the court's trial notes of the first trial would be made available to defendant's attorney and, further, that the court reporter's tape recordings of the first trial would be "available for listening and for impeachment purposes."

The evidence presented at both the first and second trials was quite similar. Leo P. Netzel, a government informer, testified that he had received a telephone call sometime during the middle of March 1974 and was informed by an individual, who he later learned was the defendant, that this individual possessed various stolen securities and that he wished to dispose of these securities. Jonas had allegedly been referred to Netzel by a mutual friend, and called to

* The Hon. William J. Campbell, United States District Court for the Northern District of Illinois, is sitting by designation.

1. The Criminal Justice Act, Title 18, United States Code Section 3006A, *et seq.*, subsection (e)(1) provides:
   "(e) Service other than counsel.—
   (1) Upon request.—Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an *ex parte* application. Upon finding, after ap-

propriate inquiry in an *ex parte* proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate·if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services."
   In addition to this statutory authority, defendant claims that he is entitled to a transcript on constitutional grounds; specifically, the Fifth Amendment right to due process, and the Sixth Amendment right to effective assistance of counsel.

inquire as to whether Netzel was familiar with a banker who would be able to dispose of stolen securities. Subsequently, Netzel and Jonas had numerous telephone conversations regarding the disposition of the treasury bill in question, culminating in a meeting of the two at O'Hare Airport on May 1, 1974.

From the airport they proceeded to a hotel coffee shop where Netzel informed Jonas of the final plans regarding the sale of one of the treasury bills. As they had previously discussed, the bill was to be sold to a foreign bank through the First National Bank of Chicago, which would be acting as the transfer agent. Netzel informed Jonas of the name of the bank vice-president whom he was to see and who would assist in the disposition of the treasury bill. Netzel gave Jonas a vice-president's business card. Jonas was driven to the bank by Netzel, who then, while in the bank, directed Jonas to the vice-president's office.

Floyd Zimms, an agent with the Federal Bureau of Investigation, purported to be the bank vice-president. He testified that he had a meeting with Jonas on May 1, 1974 at the First National Bank of Chicago. They discussed the disposition and the terms of the transfer of the treasury bill.

The defendant took the witness stand on his own behalf and testified that the transfer of the treasury bill did not involve a sale of that bill, but rather, it was a transfer of collateral to the bank for purposes of securing a business loan. Jonas contended that he had acquired the treasury bill from a business debtor in Germany as security on a business debt, and sought to secure a loan for himself following default by this foreign debtor on his obligation to Jonas. Jonas did not seek to sell the treasury bill but only to obtain a collateralized loan on the basis of this security. He further testified

that, although he suspected for various reasons that the treasury bill might have been stolen, he did not know that it was a stolen security. Despite Jonas' testimony the jury returned a verdict of guilty, and the defendant was sentenced to a term of four years.

Following the denial of a transcript, one of the defense counsel did listen to the tape recording of the first trial prior to the retrial. The transcript motion was renewed during the second trial with defense counsel suggesting that it appeared there were inconsistencies between the testimony of government witnesses at the first trial and that given by those same witnesses at the second trial. The court observed it did "not have any independent recollection" of the cross-examination of Netzel at the first trial, and did not recognize any inconsistencies in his testimony at the second trial.[2] Defense counsel, in attempting to demonstrate for the court that inconsistencies existed, was limited to relying solely upon information acquired by listening to the tape recordings.

In denying the motion, the court stated that portions of the first trial could be transcribed if defendant, after again listening to the tape recording of the first trial, could show "a particularized need for a transcript," and if the defendant could point to "material variations" between testimony given at the second trial and that given at the first trial.

The record before the trial court does not indicate that any inconsistencies in witness testimony were called to the attention of the court. Now, on appeal, counsel for the defense have outlined a number of inconsistent statements presented at the two trials by the same witnesses. Regardless of defense counsel's approach, we believe the court erred because a defendant should not

2. In contrast to the judge's recollection at transcript pages 94 and 96, government counsel stated that he knew of certain inconsistencies in the testimony. However, he also informed the court that he did not believe that the inconsistencies were significant. In light of the fact that counsel for both sides admit there were inconsistencies, we view the court's statement not as a finding of fact but merely as an indication that the judge had no independent recollection of the testimony at the time of the second trial.

be required to show inconsistencies in testimony in order to obtain a free transcript.[3]

## I.

· Both sides have acknowledged that the key case in this appeal is the Supreme Court's decision in *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). In *Britt* the same legal question was presented although the factual context of the case was much different. There an accused's three day murder trial ended in a mistrial when the jury reported it was hopelessly deadlocked, and a retrial was scheduled for the following month. The trial court denied a motion requesting a free transcript of the first trial. The Supreme Court eventually affirmed the denial because the trial of the case took place before the same judge and the same counsel in a small town; and, according to the accused's counsel, the court reporter was a good friend who would, at any time, have read back to counsel his notes of the mistrial, well in advance of the second trial, if counsel had simply made an informal request. Furthermore, at oral argument it became evident that petitioner could have obtained from the court reporter far more assistance than that available to the ordinary defendant.

But Justice Marshall, in affirming the denial of the transcript, warned against conditioning transcripts in retrial situations upon a showing of some type of particularized need. He stated:

"We agree with the dissenters that there would be serious doubts about the decision below if it rested on petitioner's failure to specify how the transcript might have been useful to him. Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of a particular case [footnote omitted]." 404 U.S. at 228, 92 S.Ct. at 434.

■ In this case, the trial court partially justified the denial of the transcript upon the defendant's failure to produce inconsistencies in witness testimony or his general failure to give compelling reasons establishing the usefulness of the prior transcript. Such a denial was improper.[4]

■ The government seeks to support the denial of the transcript on another ground cited by the trial court, *i. e.,* that alternatives such as the judge's notes and court reporter's tapes were available as a substitute for the transcript. But, unlike the situation in *Britt*, where defendant was represented by the same attorney at both trials and the two trials were separated by a period of one month, Jonas was represented by different counsel at the two trials, which were separated by a period of approximately two and one-half months. Counsel for Jonas did not have available to them an alternative which was substantially equivalent to a transcript. The tape recordings of the first trial did not allow counsel to adequately ·prepare for the second trial and were not an adequate substitute for a transcript for purposes of

---

**3.** Under 18 U.S.C. § 3006A(e)(1), the proper test to be employed should be: (1) is the defendant financially unable to obtain the services, and (2) is the service (or transcript) reasonably necessary to the defense. In this case there is no doubt raised as to the defendant's indigency. Thus the only remaining question is whether the transcript is reasonably necessary. One test to be applied in determining whether services are necessary is the reasonable attorney standard, *i. e.,* whether a privately retained counsel, under similar circumstances, where his client's resources are not unlimited, would seek the service for his client. *See United ·States v. Theriault,* 440 F.2d 713 (5th Cir. 1971); *United States v. Bass,* 477 F.2d 723 (9th Cir. 1973). Apparently, instead of applying the reasonable attorney standard, the trial judge

erroneously tried to condition the ordering of a transcript on the showing of inconsistencies in the testimony.

**4.** The assumption that a court can judge what is or what is not useful to a defense attorney has previously been refuted by the Supreme Court in another context. As stated by Justice Fortas in *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1965):

"Nor is it realistic to assume that the trial court's judgment as to utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate."

impeachment at the second trial.[5] Making only the tape recordings available during court hours, in the office of the court reporter, placed an unreasonable demand on counsel, requiring them to listen to the tapes of a two day trial and to attempt to record the verbatim statements of witnesses for effective impeachment at the second trial.

Although the trial judge offered his own trial notes to the defendant, they do not amount to a substitute for a verbatim record of what the witnesses said while on the stand. The judge's trial notes being handwritten and abbreviated do not allow for effective impeachment of a witness by reading back an original answer. Therefore we do not believe that this particular case falls within the "narrow circumstances" of the *Britt* case where the defendant had available the substantial equivalent of a transcript.

Our reading of *Britt* is substantially similar to the decisions in the other circuits.[6] Initially, the Second Circuit in *United States ex rel. Wilson v. McMann*, 408 F.2d 896 (2d Cir. 1969), ruled that a state's denial to a defendant represented by court appointed counsel of a partial transcript of his initial trial which resulted in a hung jury deprived him of his constitutional right to equal protection. Judge Medina commented on the value of a transcript, stating:

"[T]his partial transcript would be necessary for impeaching the credibility of Russo and the three corroborating witnesses by reason of any discrepancies or inconsistencies that might be found between the testimony of these witnesses at the new trial and the testimony they gave at the first trial, but the partial transcript would also be helpful in connection with a proper and effective preparation by Wilson's lawyer for the new trial." 408 F.2d at 897.

Also of particular significance to this case and the trial judge's suggestion, during trial, that upon a showing of particularized need the court reporter's tapes might then be available, is the comment in *Wilson* that:

"In other cases various suggestions are made to the general effect that a trial judge in the exercise of his discretion can avoid any violation of an indigent defendant's right to equal protection of the laws by permitting some sort of limited access, during the second trial, to the reporter at the first trial, to check any specified alleged contradiction. This is not only a case of too little and too late; it is also a breeder of delay and confusion. Worst of all, despite the good intentions of the trial judge, such a ruling is apt to lead

---

**5.** At least one state Supreme Court, New Mexico, has held that the tape recordings were a reasonable alternative and in some instances superior to an actual transcript. *See, State ex rel. Moreno v. Floyd*, 85 N.M. 699, 516 P.2d 670 (1973). However, in preparing an impeachment of a witness on the basis of statements made at a prior trial, we fail to see how counsel can repeat the previous testimony without playing the actual tapes. And, assuming that the court would allow use of the tapes, it is difficult to see how an effective cross-examination could be presented if counsel was constantly preoccupied with locating the testimony on the tape reel. Such a procedure would never be as effective as picking up the transcript, turning to the key page marked with a single paper clip and confronting the witness with his inconsistent testimony. *See State ex rel. Seigler v. Rone*, 42 Ohio St.2d 361, 328 N.E.2d 811 (1975), where the Supreme Court of Ohio has specifically held that tape recordings

are not an adequate substitute for a trial transcript.

**6.** Although the Court reached a narrow decision in *Britt*, its rationale and language supports a rather broad interpretation of the law governing the right to a transcript. It is important to remember that the majority opinion relies principally upon the cases which would support the granting of a transcript. *See Williams v. Oklahoma*, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969); *Gardner v. California*, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969); *Roberts v. LaVallee*, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); *Long v. Dist. Court of Iowa*, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966); *Draper v. Washington*, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); *Eskridge v. Washington State Board of Prison Terms and Paroles*, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) as cited in footnote 1 in *Britt*.

the defendant into a trap and gravely prejudice his defense. This is precisely what happened in this case [footnote omitted]." 408 F.2d at 897.

*United States v. Wilson, supra,* was cited with obvious approval in *Britt. See also Peterson v. United States,* 351 F.2d 606 (9th Cir. 1965); *United States v. Chapman,* 451 F.2d 1327 (5th Cir. 1971).

Since *Britt,* several circuits have reached the same result as we choose today, relying primarily on *Britt's* language rather than its narrow holding. Recently the Fifth Circuit was presented with a similar case in *United States v. Baker,* 523 F.2d 741 (5th Cir. 1975). The defendant was indicted in federal court for conspiracy to possess cocaine with the intent to distribute. Following a mistrial, private counsel asked for leave to withdraw from the case, and counsel was appointed by the court to represent the defendant at the second trial.[7] Prior to the second trial, defense counsel moved the court to require the furnishing of the transcript of the first trial. This motion was granted in part and denied in part, the court ordering the government to make available to the defendant a transcript of the testimony of the two principal government witnesses at the first trial. The court denied the motion with respect to the testimony of all other witnesses, including that of defendant and defense witnesses. Following the defendant's conviction at the second trial, he appealed the ruling of the trial court.

The Fifth Circuit held the trial court erred in refusing to order the furnishing of a complete transcript to the defendant before the beginning of the second trial. Quoting extensively from the decision of the Supreme Court in *Britt,* the court concluded that the case before it did not fall within the narrow exception set forth in

*Britt.* Defendant did not have the same counsel at both trials, and the two trials were separated by a period of six months. Finally, and most importantly, regarding the availability of an adequate alternative to a transcript the *Baker* court stated:

> "Moreover, there was no agreement or stipulation or any concession similar to what the Court referred to in the *Britt* opinion as being a basis for not concluding that 'the court below was in error in rejecting his claim.'" *Id.* at 743.

A similar result was reached by the Sixth Circuit in *United States v. Young,* 472 F.2d 628 (6th Cir. 1972).

The trial judge in *Young,* in denying defendant's motion for a transcript of the first trial, stated reasons for the denial which are virtually identical to those made by the trial judge in the instant case. Defendant's motion was denied because of defense counsel's failure to specify what portion of the transcript was desired or how he intended to use it. The two trials were conducted two weeks apart; defendant was represented by the same attorney at both trials; and "[t]he reporter was available to read back at any time any portion of the first trial that might have been requested or deemed relevant." *Id.* at 629. Only three witnesses testified in both trials, and there were not material variances in their testimony. In reversing the trial court, the Court of Appeals for the Sixth Circuit interpreted *Britt* as carving out "a narrow exception to the rule laid down by *Griffin* and its progeny," and further stated:

> "We are of the opinion that the Supreme Court in *Britt* rejected the basis for the trial court's comments in this case." *Id.* at 629.

*Young* recognized the critical importance of petitioner's concession in *Britt, id.* at 629,

---

7. The importance of the transcript to a new attorney entering a case is beyond question, as stated by Justice Goldberg in *Hardy v. United States,* 375 U.S. 277, 288, 84 S.Ct. 424, 431, 11 L.Ed.2d 331 (1964):

"[N]o responsible retained lawyer who represents a defendant at trial will rely exclusively on his memory (even as supplemented by

trial notes) in composing a list of possible trial errors which delimit his appeal. Nor should this be required of an appointed lawyer. An appointed lawyer, whether or not he represented the defendant at trial, needs a complete trial transcript to discharge his full responsibility . . . .."

and noted the unique assistance which a trial transcript provides to counsel:

"Trial lawyers and trial judges have long recognized that a transcript of prior testimony is a very useful tool in mounting an attack upon credibility of witnesses. While the trial judge may have found no discrepancies we cannot from that conclude that there would have been no material available in the transcript which counsel could have found useful in the defense of this appellant. We are of the opinion that the exception carved out in *Britt* is not applicable to this case, and we cannot say that the lack of a transcript of prior proceedings was a matter of law lacking in prejudice to this appellant." *Id.* at 630.

The Tenth Circuit has also studied the *Britt* decision and concluded that a defendant has a right to a transcript following a mistrial in *United States v. Acosta*, 495 F.2d 60 (10th Cir. 1974). The incalculable value of a transcript to trial counsel and the unique assistance which it provides counsel in preparing for trial and in impeaching witnesses at trial was noted by Judge McWilliams when he stated:

"The cases above cited uniformly recognize the value of having a transcript of the first trial in connection with preparing for a second trial of the same case. It is not only a tool to be used for impeachment purposes at the second trial, but, perhaps more importantly, it is a tool to be used in preparing for trial, particularly in framing the cross-examination question to the end that such may lead to impeachment. And in *Britt,* the Supreme Court 'doubted' that providing the defendant during the course of the second trial with limited access to the court reporter at the first trial was equivalent to a transcript of the first trial. We share the same doubt." *Id.* at 64.

## II.

In support of its argument the government has cited a pre-*Britt* decision, *United States v. Brown*, 143 U.S.App.D.C.

244, 443 F.2d 659 (1970), where the Court held that the statutory rights of an indigent defendant were not violated when he was denied the transcript of a prior trial. The Court in *Brown* stated the defendant must show that the transcript is "necessary to an adequate defense," thus requiring that the defendant show that the alternatives provided in lieu of a transcript were inadequate. But Justice Marshall in *Britt* noted:

"A defendant who claims the right to a free transcript does not, under our cases, bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight." 404 U.S. at 230, 92 S.Ct. at 435.

Arguing in the alternative, the government also states that if it was error to deny the transcript, such error was harmless beyond a reasonable doubt. Even though the evidence of guilt is substantial in this case we cannot deem this error harmless when it is of constitutional magnitude. The Court left no doubt in *Britt* that the improper denial of a transcript was error of constitutional dimension. The Court stated:

"*Griffin v. Illinois* and its progeny establish the principal that the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners. While the outer limits of that principle are not clear, there can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal. . . . ." 404 U.S. at 227, 92 S.Ct. at 433.

In addition, counsel on appeal has noted at least four areas where there exist differences or inconsistencies in the testimony of the witnesses. Even if the inconsistencies in the testimony given at each trial were minor we think the harm might be substantial. If the defense attorney had the transcript present to make an exact evaluation of the inconsistent testimony, his method of cross-examination may have

been quite different.[8] As all experienced trial lawyers realize, a rather minor inconsistency can sometimes become a major gap in a witness' story. Without the exact transcript the defense attorneys were unable to evaluate the inconsistency much less use it in examining the witness. Consequently we cannot safely assume the error was harmless even if it was not of constitutional importance. In addition, the government had at its disposal a transcript of Jonas' testimony and thus could exploit any inconsistencies. Since the defense was without a transcript of the government witnesses the parties were in an unequal position. Considering this inherent unfairness we are reluctant to deem the error harmless.

### III.

By our decision today we do not establish a *per se* rule that the government must provide a transcript following a mistrial. Under *Britt* there still may be available "an informal alternative which appears to be substantially equivalent to a transcript." However, in the overwhelming majority of cases we do not perceive that tape recordings or judicial notes will suf-

fice. Admittedly there may be some trials where the testimony is short, simple and straightforward so that the preparation of a transcript would be unnecessary. Or there may be collateral proceedings where a transcript is not required.[9] But in the difficult cases we encourage the policy of ordering a free transcript as the best alternative. Mistrials are not that plentiful so that requiring a transcript would place an unusual cost[10] or burden upon the administration of criminal justice. This case alone, which involved extensive and well prepared briefs, multiple court appearances by government and federal defender attorneys, and substantial judicial involvement, cost the taxpayers thousands of dollars more than the original cost of the transcript.

Accordingly, the case is reversed and remanded for a new trial.

Reversed and Remanded.

CUMMINGS, Circuit Judge (dissenting).

I respectfully disagree with my colleagues. Here counsel at the second trial had available the tape recordings of the first trial as well as the trial court's own notes. With such materials at hand, de-

8. As the Supreme Court stated in *Hardy, supra* n. 7, 375 U.S. at 288, 84 S.Ct. at 431:

"As any effective appellate advocate will attest, the most basic and fundamental tool of this profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established or hitherto accepted principle of law. Anything short of a complete transcript is incompatible with effective appellate advocacy."

Although the Court was discussing the right to an entire transcript on appeal, we think the above quoted language is equally apropos to the task required of trial counsel in cases where a mistrial has been declared.

9. Since oral argument the Supreme Court has issued its decision in *United States v. MacCollom*, —— U.S. ——, 96 S.Ct. 2086, 48 L.Ed.2d 666 (decided June 10, 1976), holding that a transcript need not be provided to a petitioner in a 2255 proceeding when he previously chose to forego his opportunity for a direct appeal with its attendant free transcript. Of course the *MacCollom* case holding differs substantially from the facts of this case where the counsel for the defense made repeated requests for a

transcript from the time a mistrial was declared. If, in this case, the defendant made no request for a transcript until after his time for appeal was exhausted *MacCollom* might have been applicable.

10. In *MacCollom, supra*, Justice Stevens (dissenting) points out that the cost of providing a defense for indigents has not been overwhelming. He notes that the fees and expenses of appointed counsel have amounted to between 5% and 9% of the expenditure for the lower federal courts in recent years. That figure is rather miniscule when one realizes that the budget for the courts is only 1/10 of 1% of the national budget. On the basis of these figures he wisely concludes:

"[E]ven assuming an increase in monetary costs, we should take into account the costs associated with unnecessary delay in the appellate process and the savings in judges' time and that would result from the elimination of the need to decide questions such as this. One of our nation's scarcest resources is the time of our judges'; if spending a few dollars for automatic disposition of preliminary issues will enable them to devote extra time to adjudicating disputes on the merits, the money will be well spent. . . ."

fense counsel could adequately prepare for possible impeachment of witnesses at the second trial. In my view, defendant did have "an informal alternative which appears to be substantially equivalent to a transcript." *Britt v. North Carolina,* 404 U.S. 222, 230, 92 S.Ct. 435. No more was required; the *Britt* exception applies.