**Leonard David RIGGINS, Petitioner–Appellee,**

v.

**John REES, Warden, South Central Correctional Facility, Respondent–Appellant.**

**No. 95–5711.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 25, 1996.

Decided Feb. 8, 1996.

---

Mariah A. Wooten, Caryll S. Alpert (argued and briefed), Federal Public Defender's Office, Nashville, TN, for petitioner-appellee.

Sharon S. Selby, Asst. Atty. Gen., Glenn R. Pruden, Criminal Justice Div., William D. Bridgers (argued and briefed), Office of Atty. Gen., Nashville, TN, for respondent-appellant.

Before: MARTIN, GUY, and RYAN, Circuit Judges.

BOYCE F. MARTIN, Jr., J., delivered the opinion of the court, in which RYAN, J., joined. RALPH B. GUY, Jr., J. (pp. 738–40), delivered a separate dissenting opinion.

BOYCE F. MARTIN, Jr., Circuit Judge.

The State of Tennessee appeals the district court's grant of a writ of habeas corpus in connection with Leonard Riggins' conviction for second degree murder in a Tennessee state court. The district court held that Riggins was denied his right to equal protection under the law because, prior to Riggins' third trial, the State refused to provide defense counsel with transcripts of Riggins' two prior trials, each of which ended in a mistrial. In doing so, the district court rejected the State's claim that providing defense counsel with access to tapes of Riggins' two prior trials was a constitutionally adequate, substantially equivalent substitute to a transcript, as required by *Britt v. North Carolina*, 404 U.S. 226, 227–28, 92 S.Ct. 431, 433–34, 30 L.Ed.2d 400 (1971). In this appeal, the State argues that the district court's holding is in conflict with *Britt*, and that allowing defense counsel access to tapes of Riggins' two prior trials in advance of his

third trial was in fact an adequate alternative to a transcript. After a careful review of the record, we agree with the district court that the State's failure to provide Riggins with transcripts from his two previous mistrials violated Riggins' equal protection rights.

Riggins was indicted in March of 1980 on a charge of second degree murder in connection with the shooting death of Harvey Lee Chapman. Riggins is indigent, and counsel was appointed by the Tennessee state court. The case proceeded to trial in June of 1980, and on the second day of trial the court declared a mistrial due to prejudicial remarks made by a prosecution witness before the jury. Riggins was tried again in August of 1980, and, after a three day trial, the court declared a mistrial due to a hung jury. Finally, in November of 1980 Riggins was tried a third time and was convicted of second degree murder after a three day trial. During the course of that trial, the State presented the testimony of eleven witnesses, six of whom testified at all three trials.

Prior to the third trial, Riggins' counsel requested transcripts of the previous two trials. The State denied counsel's requests, reasoning that counsel had heard all of the testimony from the prior trials and that the court reporter's tapes were a sufficient alternative to a written transcript. In compliance with the state court's ruling, and prior to the third trial, Riggins' counsel listened to the court reporter's tapes on three occasions, twice at the courthouse, and once at the court reporter's home, for at least sixteen hours.

After Riggins' conviction, transcripts of all three trials were made available to defense counsel for purposes of appeal. Counsel then sought a reversal of Riggins' conviction on direct appeal and subsequent collateral proceedings in state court, arguing in part that the state court's denial of transcripts from the two mistrials violated Riggins' equal protection rights. Riggins' equal protection claim was denied by every state court that addressed the issue.

Riggins then sought habeas corpus relief pursuant to 28 U.S.C. § 2254, filing an amended petition for a writ of habeas corpus on December 10, 1993, in the United States District Court for the Middle District of Tennessee. The State of Tennessee answered the amended petition, and the district court referred the case to a magistrate judge for an evidentiary hearing on the merits of Riggins' equal protection claim, dismissing all other claims in Riggins' habeas petition. After conducting an evidentiary hearing, the magistrate recommended that a writ should issue in Riggins' favor, finding that the State's failure to provide Riggins with transcripts of his two prior trials before Riggins' third trial violated his equal protection rights.

The district court conducted a *de novo* review and, after agreeing with the magistrate's decision, entered an order on April 17, 1995, vacating Riggins' conviction and directing that a writ of habeas corpus issue unless the State retried Riggins within ninety days. The district court grounded its decision in the belief that providing Riggins' counsel with free access to the court reporter's tapes of the two previous trials was not a substantially equivalent alternative to a transcript as required under the Supreme Court's decision in *Britt.* The district court subsequently granted the State's motion for a stay of its order and this appeal followed.

The facts of this case are essentially undisputed. Riggins' counsel listened to tapes of the two prior trials at least twice in the courthouse for a few hours and once at the court reporter's home for twelve hours. Riggins' counsel did not remember being denied access to the tapes at any time prior to the third trial. However, Riggins' counsel did state that he would have been able to cross-examine several of the witnesses more effectively if he had had access to the transcript of the first two trials during Riggins' third trial. Riggins' third trial was somewhat complicated and took three days to complete, with the State introducing testimony from eleven witnesses.

After receiving transcripts of all three trials for the purposes of appeal, Riggins' counsel identified discrepancies in the testimony of six different witnesses that he would have been able to pursue during cross-examination if he had had transcripts from the first two

trials. Some of these discrepancies are minor, some perhaps more important.

■ In *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court held that, to satisfy the commands of the Equal Protection Clause, states may not condition the exercise of basic trial and appeal rights on a defendant's ability to pay for such rights. *Id.* at 19, 76 S.Ct. at 590. *Griffin* and its progeny command that a State must "provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt,* 404 U.S. at 227, 92 S.Ct. at 433. In the context of providing transcripts to indigent defendants, the Supreme Court explained in *Britt:*

> In prior cases involving an indigent defendant's claim of right to a free transcript, this Court has identified two factors that are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript.

*Id.* (footnote omitted). As to the first factor, the Court explained further that "[o]ur cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case." *Id.* at 228, 92 S.Ct. at 434. The Court then focused its attention on whether, under the circumstances of case before it, the defendant had a "substantially equivalent" alternative to a transcript available to him. The defendant's first trial took three days to complete, and ended with a hung jury. The

defendant's second trial began just one month later. The Court noted that the "petitioner could have obtained from the court reporter far more assistance than that available to the ordinary defendant. . . ." *Id.* at 228–29, 92 S.Ct. at 434. In addition, the Court recognized that the trials occurred in a small town, and the court reporter was good friends with all the local lawyers. *Id.* In fact, Britt's counsel conceded that he could have called the court reporter at any time prior to Britt's second trial to listen to the court reporter's tapes of Britt's first trial. On these facts, the Supreme Court held that a substantially equivalent alternative had been available to the defendant, and no constitutional violation occurred.[1] *Id.* at 230, 92 S.Ct. at 435.

This Circuit has interpreted *Britt* as creating a "narrow exception" to the requirement that a State provide a free transcript of a prior mistrial to indigent criminal defendants. *United States v. Young,* 472 F.2d 628, 629 (6th Cir.1972); *see also Martin v. Rose,* 525 F.2d 111, 112–13 (6th Cir.1975). Several other circuits also have interpreted *Britt* as generally requiring a transcript unless the state shows that its alternative procedure was substantially equivalent. *See United States v. Devlin,* 13 F.3d 1361, 1363–64 (9th Cir.1994) (requiring a transcript where the state showed that no "practicable alternative" to a transcript existed); *United States v. Jonas,* 540 F.2d 566, 573 (7th Cir.1976) (noting that under *Britt* "in the overwhelming majority of cases" tape recordings or judicial notes are not adequate substitutes for a transcript); *United States v. Baker,* 523 F.2d 741, 742–43 (5th Cir.1975) (holding that

---

1. Although *Britt* remains good law, the Supreme Court has moved away from relying on equal protection and instead has used the language of due process in deciding whether a state must provide certain kinds of defense services to indigent criminal defendants. *Britt* itself contains language signalling an increased reliance on due process, stating that *Griffin* and equal protection command that the state provide "the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt,* 404 U.S. at 227, 92 S.Ct. at 433. Later Supreme Court cases explicitly or implicitly rely on due process rather than equal protection in deciding whether a state has provided an indigent criminal defendant with adequate resources

to present a defense. *See, e.g., Ake v. Oklahoma,* 470 U.S. 68, 76, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985) (stating that providing an indigent defendant with adequate defense tools is "grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, [which] derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding"); *Ross v. Moffitt,* 417 U.S. 600, 608–612, 94 S.Ct. 2437, 2442–45, 41 L.Ed.2d 341 (1974) (utilizing due process analysis and noting the limits of the use of equal protection when determining whether the state has afforded an indigent defendant fair procedures at trial).

no functional alternative to a transcript existed where defendant's two trials were separated by a period of six months and the defendant did not have the same counsel at the second trial). The *Britt* opinion itself indicated that access to a court reporter's tapes would not always be a sufficient substitute to a transcript, stating "[w]e have repeatedly rejected the suggestion that in order to render effective assistance, counsel must have a perfect memory or keep exhaustive notes of the testimony given at trial." *Britt*, 404 U.S. at 229, 92 S.Ct. at 434.

In *Young*, this Court held that the trial court erred in refusing to provide a transcript of the defendant's first trial where the cases occurred two weeks apart and three separate witnesses testified at both trials. We observed that "[t]rial lawyers and trial judges have long recognized that a transcript of prior testimony is a very useful tool in mounting an attack upon the credibility of witnesses." *Young*, 472 F.2d at 630. However, in *Young* it appeared that the defendant's counsel did not have access to the court reporter's tapes and notes of the first trial until the defendant's second trial was already underway. Here, Riggins' counsel did have access to the court reporter's tapes well in advance of Riggins' third and final trial. Given this fact, *Young* does not necessarily control this Court's decision here.[2]

In *Martin v. Rose*, the defendant had been convicted in a Tennessee state court for bank robbery. 525 F.2d at 112. Prior to the state trial, the defendant attempted to obtain a free transcript of his previous trial and acquittal for the same offense in federal court. The state court denied the defendant's request. *Id.* We held that the state court's refusal to provide the defendant with a free transcript of his previous federal trial violated the defendant's right to equal protection, relying on *Britt,* and this Court's decision in

*Young. Id.* at 112–113. However, unlike the present case, in *Martin* there was no suggestion of the availability of an alternative device that would take the place of providing the defendant with a transcript of his federal trial. Nonetheless, this Court recognized the importance of a transcript to a criminal defendant:

> [W]e can think of no more valuable document for defense counsel approaching a contested trial than the record of the previous trial of his client for the exact same crime with which he is charged again before the court of another sovereign. We cannot conceive of a competent lawyer for an affluent client who would not order a trial transcript under such circumstances.

*Id.* at 113. Similarly, here there can be no question that transcripts from Riggins' first two trials were extremely important to Riggins' counsel in preparing for Riggins' third trial. That Riggins' counsel believed it necessary to listen to the court reporter's tapes from Riggins' first two trials for at least sixteen hours demonstrates this fact.

■ Nonetheless, we can assume the value of the transcripts in this case, in light of *Britt's* holding that a defendant need not demonstrate the value of a transcript of prior proceedings "tailored to the facts of a particular case." *Britt,* 404 U.S. at 228, 92 S.Ct. at 434. Under *Britt,* what *does* require an individualized assessment of the facts of each case is whether the state's alternative procedure is "substantially equivalent" to a transcript. In making this assessment, it is important to note the purposes served by providing an indigent defendant with a transcript of his prior proceeding. In *Britt,* the Supreme Court explained:

> [I]t can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a

---

2. In *Britt,* the Supreme Court noted that the defendant's counsel conceded that he could have called the court reporter at any time to have part or all of the prior record read back to him. In *Young,* this Court noted that, contrary to *Britt,* the defendant's counsel had "not conceded that he had such [an] 'informal alternative'." *Young,* 472 F.2d at 629. We do not read *Britt* or this Court's decision in *Young* as considering counsel's concession—or lack thereof—dispositive of

the issue. Instead, we read *Britt* simply to mean that, in some circumstances, allowing defendant's counsel access to the court reporter's notes and tapes from a previous trial is a substantially equivalent alternative to a transcript which satisfies the equal protection principles set forth in *Griffin,* later characterized as "the Fourteenth Amendment's due process guarantee of fundamental fairness." *Ake,* 470 U.S. at 75, 105 S.Ct. at 1092.

discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses.

*Id.* Accordingly, we must assess whether the state's alternative approach is "substantially equivalent" to a transcript in light of the use for which a transcript is requested. Here, Riggins makes no claim that a transcript would have aided his discovery efforts. Instead, Riggins claims that, in this case, a transcript was necessary for impeachment of the six prosecution witnesses who testified at both of his prior trials.

■ For purposes of impeachment on cross-examination, the complexity of a defendant's trial and the time between trials are important factors when assessing whether a state's alternative procedure is substantially equivalent to a transcript in a given case. *See United States v. Mullen,* 550 F.2d 373, 374 (6th Cir.1977) (distinguishing *Britt* in part because trial involved eleven government witnesses testifying at both of the defendant's trials). Access to a court reporter's tape of a one day, two witness trial that occurred three weeks previously may often be an adequate substitute to a transcript. In such a case, counsel might be able to remember clearly the testimony given previously and a short session with a court reporter's tape on the eve of the second trial might well provide an adequate basis on which to cross-examine the witnesses at trial. On the other hand, in a case such as this one, where *two* prior mistrials occurred, a period of five months separated the first trial from the last trial, and six different prosecution witnesses testified at all three trials, access to a court reporter's tapes rarely will be substantially equivalent to a transcript. We have no doubt that, in such a case, every competent attorney representing a more affluent defendant

would purchase a transcript of the prior proceedings, because listening to court reporter's tapes would not enable the attorney to provide services substantially equivalent to representation with a transcript in hand.

While the Supreme Court in *Britt* held that access to the court reporter's tapes was an adequate substitute to a transcript under the facts of that case, *Britt,* 404 U.S. at 229–30, 92 S.Ct. at 434–35, the trial [there] was relatively simple and the two trials were separated by a period of one month. Further, the case arose in a small town in which the defense attorney and the court reporter were personal friends, and the defense attorney easily could have reviewed the court reporter's tapes at the reporter's house or the courthouse. Finally, the defendant's counsel conceded that "he had available an informal alternative which appears to be substantially equivalent to a transcript." *Id.* at 230, 92 S.Ct. at 435.

■ Unlike the situation presented in *Britt,* and as explained above, this case involves two prior mistrials, with the third and final trial coming some five months after the original trial. The trial was fairly extensive, with at least six witnesses who testified at each of the three trials. Riggins' counsel identified inconsistencies in all six of the witnesses' testimony that he would have been able to bring out on cross-examination if he had had a transcript available to him.[3] These facts serve to distinguish this case from the result reached by the Supreme Court in *Britt. See also Mullen,* 550 F.2d at 374.

In sum, on the facts of this case, we hold that the state's failure to provide Riggins with transcripts from his two previous trials violated his equal protection rights. Given the complexity of this case, and the five

---

**3.** As the dissent points out, Riggins' counsel did testify at the evidentiary hearing that he was able to confront several of the witnesses about possible discrepancies in their testimony at Riggins' third trial. However, counsel also has consistently stated that his cross-examination would have been much more effective had he been able to obtain a transcript prior to trial, and that, after receiving transcripts for the purposes of appeal, he found discrepancies that he did not remember from his review of the tapes during cross-examination. The dissent chooses to judge

for itself whether these discrepancies are major or minor. We decline to do so. The effect of even inconsequential discrepancies in a witness' testimony may in some cases be enough to sway a jury. On the other hand, in some cases a major discrepancy in a witness' testimony may later be explained such that the jury finds the witness' testimony credible despite the inconsistency. It is not for us to say whether these inconsistencies were major or minor in this case, especially when we note that Riggins' second trial ended in a hung jury.

month time period separating Riggins' first trial from his last, giving Riggins' counsel access to the court reporter's tapes was not substantially equivalent to a transcript.

■ Finally, the denial of the transcript in this case is not harmless error. *See generally Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (adopting a harmless error standard for certain kinds of trial errors). Riggins' second trial ended with a hung jury. Obviously, the case was a close one in which the credibility of the prosecution's witnesses was vitally important to a determination of guilt or innocence. Providing Riggins' counsel with a transcript of Riggins' prior trials, which would facilitate effective cross-examination of the prosecution witnesses, assumes even greater importance in close cases. We cannot say that the failure to provide counsel with the transcripts was "harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828.

The district court correctly concluded that the state's failure to provide Riggins with transcripts of his prior two trials violated the principles enunciated in *Britt v. North Carolina.* In addition, the failure to provide the transcripts was not harmless error. We **AFFIRM** the district court's order issuing the writ of habeas corpus.

RALPH B. GUY, Jr., Circuit Judge, dissenting.

Because I believe the result in this case is controlled by the Supreme Court's decision in *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), I respectfully dissent.

*Britt* involved, as does the case at bar, a retrial after a mistrial due to a hung jury. Petitioner requested a free transcript of his first trial and the request was denied. The second trial resulted in a conviction, and on appeal the conviction was affirmed. The Supreme Court granted certiorari and also affirmed.

In affirming, the Court made it clear that it was not retreating from its holding in *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), where the Court held that indigent defendants must be provided with the basic tools of an adequate defense when those tools are available for a price to other defendants. Failure to so provide would be a violation of the Fourteenth Amendment's equal protection guarantee. When a transcript is at issue, the Court also clearly indicated that no showing of any particularized need was required. It would "ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant.... " 404 U.S. at 228, 92 S.Ct. at 434.

Notwithstanding the foregoing, the Court did allow for an exception to furnishing a "free transcript." If "alternative devices" were available that would fulfill the same functions as a transcript, the refusal to provide a transcript would not be an error requiring reversal. Indeed, in *Britt,* the Court based its affirmance on the fact that "the reporter would at any time have read back to counsel his notes of the mistrial, well in advance of the second trial, if counsel had simply made an informal request." *Id.* at 229, 92 S.Ct. at 435. It was also significant that the defendant's lawyer and the court reporter were the same in both trials.

Since *Britt* sets the standard by which what occurred here is measured, Riggins attempts to distinguish *Britt.* Petitioner first argues that the interval between his trials was longer than the one month interval in *Britt.* Although this is factually correct, I do not find it a significant distinction. Riggins was involved in two prior trials and the span of time encompassing all three trials was only five months. As was the case in *Britt,* the defense counsel and the reporter were the same in all three cases. Furthermore, the witness, deemed key by the defendant, testified in all three trials.

The petitioner next argues that in *Britt* the Court noted that petitioner "conceded that he had available an informal alternative which appears to be substantially equivalent to a transcript." *Id.* at 230, 92 S.Ct. at 435. Petitioner, as did the magistrate judge and the district judge, misconstrues this quote. Riggins would read the quote as if the defense counsel conceded not only the alternative, but also its adequacy. I disagree with this interpretation. In my view, the observation that the alternative was "substantially

equivalent to a transcript" is that of the Court.

The facts here would appear to be much stronger in favor of respondent than was true in *Britt*. In *Britt*, the mere availability of the alternative was deemed adequate. Here, with the aid of a most cooperative and willing court reporter, counsel actually availed himself of the alternative of listening to the tapes of the earlier trial and taking notes.

Petitioner's final attempt to distinguish *Britt* sets forth his best argument. After Riggins was convicted in his third trial, he did get a free transcript of all three trials for purposes of appeal. Counsel now argues that when he compared the three transcripts, he saw discrepancies in the testimony of certain witnesses, which he either did not note initially in his review of the tapes or did not remember at the third trial.

Riggins' defense counsel testified at the evidentiary hearing conducted in the district court, but, due to the long passage of time, he had virtually no helpful memory. Petitioner relies upon the appellate brief filed in the state court that sets forth the alleged discrepancies.

My reaction to this line of argument is twofold. First, defense counsel, having heard all of the witnesses testify on two previous occasions, did challenge witnesses in the third trial and attempted to impeach them by referencing their prior testimony. Whether the failure to make additional challenges was trial strategy or an impediment imposed by not having a written transcript, no one will ever know. It is clear from defense counsel's testimony at the evidentiary hearing, however, that he enjoyed some success in his impeachment efforts.

Q. And you were able to hear their testimony at the earlier trials?

A. Uh-huh, yes.

Q. Did you need to go back and listen to any of those at any time?

A. I think I made the decision to rely upon my notes from taking the tapes in order to make it a—make the proceeding flow. In other words, they were making a statement at the third trial, and I—and I just simply made the observation that they were under oath on three—on three different occasions, and did you not say this on one occasion, and this on the second occasion, and now you're saying this. And I think in almost—in most of the situations, the witness somewhat admitted that the story had changed a little bit, their memory had gotten clearer with the passage of time.

Q. And so—so you were indeed able to confront them with discrepancies in their testimony?

A. Yes, ma'am.

Q. Did you ever ask at any time if a limited portion of the record could be transcribed based on your—your notes selecting short portions of the record.

A. I don't believe I did, no.

Second, defense counsel never asked to have any portions of an earlier tape played or verbatim testimony read back by the court reporter during the third trial.

Petitioner further argues that in *Britt* the defense counsel never availed himself of the opportunity to have the reporter read back the testimony of the first trial, so the court just presumed this would have been an acceptable alternative. Riggins, in effect, argues that he has rebutted any such presumption because his counsel did hear the earlier tapes, and then did secure a transcript and found the latter to be superior to the former. I have no doubt that having the written transcript would have been better, and authorizing the furnishing of earlier transcripts would be the better practice. But, in *Britt*, the Court did not require that the alternative be equal, but only "substantially equivalent."

Nonetheless, taking petitioner's argument at face value, I have reviewed the discrepancies relied upon in his appellate brief filed in the state court *as did the state court*. I find none of them to have been significant enough to have changed the outcome of the trial if pointed out to the jury during the trial. For the most part, the alleged discrepancies involve the type of minor variances in testimony that one would expect from witnesses testifying a considerable period of time after the murder took place. For example, one of

the investigating officers, who took a statement from Riggins, gave three different dates as the date on which the statement was taken. Two of the dates given were obvious errors, as they preceded the date of the murder. I find little significance in this type of discrepancy. Also, there is no attempt to show the relevance of the precise date the inculpatory statement was made.

Particular attention was paid to the testimony of Erskine Moore, since his was accomplice testimony, and he was the only witness with a possible motivation to lie. The discrepancies pointed out in Moore's testimony, however, are all relatively insignificant. For example, at the first trial, "Mr. Moore testified that he arrived at the Lincoln County Fair between 6:30 and 7:00 p.m. on September 14, 1977. The defendant, two others and he left there between 7:30 and 8:00 p.m."

At the second trial, Moore testified, "he got with the defendant and two others between 7:00 and 8:00 p.m. on September 14, 1977. All four rode to the vicinity of Chapman residence between 9:00 and 10:00 p.m."

At the third trial, Moore testified that "all four met at the Lincoln County Fairgrounds between 6:30 and 7:00 p.m. on September 14, 1977, and that they left there between 7:00 and 7:45 p.m."

Given that it was established that the murder took place close to 9:30 p.m., these variances in arrival and departure time appear to be the normal lapses in memory that one might expect in recalling a past event. Indeed, if Moore had intended to falsely implicate the defendant, the likelihood is his version of what occurred would have had the consistency that comes with contrived testimony.

Although petitioner cites to cases from other circuits giving at least superficial support to his arguments, I find the cases relied upon distinguishable. For example, the magistrate judge and the petitioner both place heavy reliance on *United States v. Jonas*, 540 F.2d 566 (7th Cir.1976). In *Jonas*, the court found that the trial court's refusal to grant a transcript of a prior trial was error even though the trial judge pointed out that his trial notes and the tapes of the first trial were available. To reach this conclusion, however, the court had to distinguish *Britt*, which "[b]oth sides ... acknowledged [was] the key case...." *Id.* at 569. In an attempt to do so, the court makes much of the fact that defendant was not represented by the same counsel at both trials. Also, the tapes were available "only ... during court hours, in the office of the court reporter...." *Id.* at 570.

Unlike *Jonas*, the facts in our case track *Britt*. We have the same cast of characters in all three trials and the court reporter went to great lengths to make herself available, including a 12-hour Saturday session at her house during which she served lunch to defense counsel.

It is clear that the court in *Jonas* did not like the result reached in *Britt* and relied "primarily on [its] language rather than its narrow holding." *Id.* at 571. Judge Cummings dissented on the grounds that he could not distinguish *Britt*. It is significant that *Jonas* involved a federal prosecution and the court was, in part, interpreting a federal statute, 18 U.S.C. § 3006A(e)(1), which indicates the type of services to be made available without charge to an indigent defendant.

Whether the *Britt* holding is a good one or a bad one is, of course, a question on which reasonable minds might differ. I am unable, however, to find any significant factual distinctions in the case at bar that would mandate a departure from *Britt's* holding and analysis.